STATE of Minnesota, Appellant,

v.

Todd SKIPINTHEDAY, Respondent.

No. A04–1293.

Supreme Court of Minnesota.

July 13, 2006.

Mike Hatch, Atty. Gen., James B. Early, Asst. Atty. Gen., St. Paul, MN.

Michelle Dietrich, Redwood County Atty., Redwood Cty. Courthouse, Redwood Falls, MN, for appellant.

Philip Marron, Office of the State Public Defender, Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

In this case, the state seeks review of the court of appeals' sentencing decisions regarding respondent Todd Skipintheday. Skipintheday pleaded guilty under Minn. Stat. § 609.495, subd. 3 (2004), to three counts of being an accomplice after-the-fact to crimes arising from a three-victim shooting in Redwood Falls, Minnesota, on July 12, 2003. The district court determined that Skipintheday committed multi-ple-victim crimes, and therefore gave Skipintheday a separate sentence for each of the three counts. The court of appeals reversed, determining that the crime of being an accomplice after-the-fact is a crime against the administration of justice, not a crime against personal victims. *State v. Skipintheday,* 704 N.W.2d 177, 181–82 (Minn.App.2005). We affirm. This opinion confirms our order filed May 24, 2006, vacating Skipintheday's sentences for accomplice after-the-fact to assault in the first degree for the benefit of a gang, and for accomplice after-the-fact to attempted second-degree murder.

On July 11, 2003, Skipintheday, an associate of the Native Gangster Disciples gang, traveled from Minneapolis to Redwood Falls with Kimberly Berry and two members of the Native Gangster Disciples gang, James Mata and Itanca Henry. That night the group attended a private party in Redwood Falls. Berry told the group that members of a rival gang, the Native Mob, would also be in attendance, so Mata brought a .40 caliber handgun to the party.

At the party, Henry and another individual flashed gang signs[1] at each other, argued about a peace treaty between the Native Gangster Disciples and the Native Mob, and began to shove each other. Skipintheday observed the argument, although he did not participate in it. The argument moved outside, and the shoving continued. At some point, an additional person arrived in a truck with a TEC–9 submachine gun. Skipintheday yelled a warning to his friends about the person with the submachine gun, and ran behind the house. He then began to hear "a volley of shots, and then a pause, and then more shots." When Skipintheday came out from behind

---

1. Gang signs are hand gestures used by gang members to indicate their membership in a certain gang.

the house, he saw Mata fighting someone to get control of the submachine gun. Skipintheday then went to the car the group had arrived in, and Mata came to the car after him, carrying the submachine gun. Skipintheday yelled to Berry, who had driven the car to the party, "[L]et's get out of here. We got to go." As a result of the shootings at the party that night, two people were seriously wounded, and one person was killed.

Skipintheday, Mata, Henry, and Berry left Redwood Falls intending to drive to Berry's house. As they left, Mata said that he had shot someone. Skipintheday told Berry, "[you] didn't see anything," and she responded, "[I] wasn't there * * * [I] didn't see anything."

Before the group made it to Berry's house, their car was stopped by the Lower Sioux reservation police. Skipintheday attempted to hide Mata's .40 caliber handgun and its ammunition on either side of the front console between the two front seats. Someone else hid the submachine gun under one of the seats.

Later, Skipintheday was interviewed by the Redwood Falls police. Knowing that Itanca Henry had an outstanding federal arrest warrant and wanting to conceal Henry's identity, Skipintheday referred to Henry repeatedly as "Robert" Henry. Skipintheday also denied witnessing much of what he actually observed that night.

Skipintheday ultimately pleaded guilty to being an accomplice after-the-fact under Minn.Stat. § 609.495, subd. 3,[2] in relation to three underlying crimes: first-degree murder, attempted second-degree murder, and first-degree assault for the benefit of a gang. At Skipintheday's plea hearing, he admitted that he gave false statements to police with the intent to help Mata and Henry "get away with the crime." Following sentencing proceedings, the district court determined that because Skipintheday was an accomplice after-the-fact to three underlying offenses, each related to a separate shooting victim, Skipintheday's crimes fell under a multiple-victim exception to the general rule under Minn.Stat. § 609.035 (2004), which typically permits only one sentence for crimes arising out of a single behavioral incident. *See State v. Schmidt*, 612 N.W.2d 871, 876 (Minn.2000). Therefore, the district court gave Skipintheday multiple sentences—48 months, 48 months, and 52 months—for the three crimes.[3]

On appeal, the court of appeals reversed and remanded for resentencing. The court determined that the crime of being an accomplice after-the-fact under Minn. Stat. § 609.495, subd. 3, is a crime against the administration of justice, not a crime against personal victims, and therefore determined that Skipintheday's crimes were not "multiple-victim crimes" for the purpose of multiple sentencing. The state now appeals that decision, arguing that the victims of the underlying shooting crimes

---

2. Minnesota Statutes § 609.495, subd. 3, provides:

Whoever intentionally aids another person whom the actor knows or has reason to know has committed a criminal act, by destroying or concealing evidence of that crime, providing false or misleading information about that crime, receiving the proceeds of that crime, or otherwise obstructing the investigation or prosecution of that crime is an accomplice after the fact * * *.

3. The district court determined that because Skipintheday's crimes were multiple-victim crimes, they were also "crimes against persons" under Minn. Sent. Guidelines II.F.2 (2004), such that his three sentences could be imposed consecutively, not concurrently. Because we hold that Skipintheday's crimes are not subject to multiple sentencing, they could never be sentenced consecutively.

were also victims of Skipintheday's accomplice-after-the-fact crimes.

Whether a defendant commits multiple-victim crimes is a question of law, which this court reviews de novo. *See State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). Typically, when a person commits multiple offenses that all arise from a single behavioral incident, Minn. Stat. § 609.035[4] allows a court to enter a sentence for only one of the crimes. *Schmidt*, 612 N.W.2d at 876. This court has explained that "[t]he philosophy behind the statute * * * [is] to protect against exaggerating the criminality of a person's conduct and to make both punishment and prosecution commensurate with culpability." *State ex rel. Stangvik v. Tahash*, 281 Minn. 353, 360, 161 N.W.2d 667, 672 (1968).

But despite the general rule under section 609.035, this court has held that courts are not prevented from giving a defendant multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct. *State v. Marquardt*, 294 N.W.2d 849, 851 (Minn.1980); *see State ex rel. Stangvik*, 281 Minn. at 360–61, 161 N.W.2d at 672–73. Though this court has often applied the multiple-victim exception in cases involving multiple violent crimes or sex crimes, this court has never extended the multiple-victim exception to the crime of accomplice after-the-fact. *See, e.g., Bangert v. State*, 282 N.W.2d 540, 546–47 (Minn.1979) (multiple murders merited multiple sentences); *State v. Gilbert*, 262 N.W.2d 334, 338 (Minn.1977) (an aggravated assault and a sex crime merit-

ed multiple sentences); *State v. Briggs*, 256 N.W.2d 305, 305–06 (Minn.1977) (three sentences merited for defendant who fired 20 bullets at three victims); *see also State v. Gartland*, 330 N.W.2d 881, 882–83 (Minn.1983) (where multiple deaths were a reasonably foreseeable consequence, a vehicular homicide killing two people merited two sentences).

The state argues that the multiple-victim exception should apply because the three shooting victims of the underlying crimes are also victims of Skipintheday's accomplice-after-the-fact crimes. To support this argument, the state relies on an analogy to coconspirators, or "accomplices *before* the fact," under Minn.Stat. § 609.05 (2004), who are considered to commit crimes against the victims of a principal perpetrator, even if the coconspirators do not directly harm the victims. *See State v. Ford*, 322 N.W.2d 611, 615–16 (Minn.1982) (holding that coconspirators commit "crimes against persons" under Minn. Sent. Guidelines II.F (1981)). The state argues that because coconspirators are considered to harm the same victims who the principal harms, it follows that the principal's victims should also be considered to be the victims of an accomplice after-the-fact under section 609.495, subd. 3. The state contends that "helping someone commit murder should not be a victimless crime."

But the state's analogy misses a critical distinction between coconspirators under section 609.05 and accomplices after-the-fact under section 609.495, subd. 3. Under the statutory definitions, a coconspirator helps someone *commit* a crime, but an accomplice after-the-fact helps *a person* who *has committed* a crime evade the law.

---

4. Minnesota Statutes § 609.035, subd. 1, provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them."

*Compare* Minn.Stat. § 609.05 *with* Minn. Stat. § 609.495, subd. 3. Professor LaFave also notes this distinction:

> [Accessories before the fact have] played a part in the commission of the crime and are quite appropriately held accountable for its commission. The accessory after the fact, on the other hand, had no part in causing the crime; his offense is instead that of interfering with the processes of justice and is best dealt with in those terms.

2 Wayne R. LaFave, *Substantive Criminal Law* § 13.6(a), at 404 (2d ed.2003). Therefore, for the purposes of Minn.Stat. § 609.035, though coconspirators may properly be held responsible for the victims of their crimes, accomplices after-the-fact come along after the victims have been harmed and do not further their victimization merely by helping the principal offenders evade the law.[5]

The state also observes that the actions of an accomplice after-the-fact can hurt a number of people in a number of ways. For example, the victims of the underlying crimes and their loved ones may be disheartened if the accomplice after-the-fact succeeds in obstructing the prosecution of a crime. Local residents may fear for their safety when a criminal is at large. And to a degree, society as a whole may suffer as well, knowing that the justice system has been thwarted by an accomplice's crime of obstructing an investigation.

The state is surely correct that an accomplice after-the-fact may cause all these harms and more. *See State v. Jones,* 678 N.W.2d 1, 24 (Minn.2004) ("Every crime resonates within its community and may create innumerable victims, from the person against whom the crime was perpetrated to the unknown neighbor whose feelings of security are undermined."). But to define all those who suffer even the most indirect harm as "victims" for the purpose of the multiple-victim exception to section 609.05 would be to sweep nearly all crimes within the multiple-victim exception, and in so doing swallow the rule. *See Jones,* 678 N.W.2d at 24 (rejecting a similarly broad definition of the term "victims," noting that such a broad definition would lead to "absurd" results).

For these reasons, we hold that Skipintheday's three counts of being an accomplice after-the-fact, all arising from a single behavioral incident, were not multiple-victim crimes, and are therefore not subject to multiple sentences under Minn.Stat. § 609.035. Accordingly, by an order previously issued on May 24, 2006, we have vacated Skipintheday's sentences for accomplice after-the-fact to assault in the first degree for the benefit of a gang, and for accomplice after-the-fact to attempted second-degree murder. *See State v. Morris,* 281 Minn. 119, 123, 160 N.W.2d 715, 718 (1968) (stating that Minn.Stat. § 609.035 "permits punishment for the most serious crime resulting from one behavioral incident").

Affirmed.

---

5. We do not rule out the possibility that the crime of being an accomplice after-the-fact could be a multiple-victim crime in other situations. But such a determination would turn on the manner in which the crime of accomplice after-the-fact was perpetrated, not on the nature of the underlying crime. *Cf. State v. Myers,* 627 N.W.2d 58, 62–63 (Minn.2001) (holding that obstructing legal process, while not classified or labeled as a crime against a person in the criminal code, may be a crime against a person under the sentencing guidelines if the defendant's conduct "poses a special danger to human life."). Here, Skipintheday's culpable acts were hiding a gun and lying to police officers, and these acts were not committed in a manner that affected multiple victims.