**STATE of Minnesota, Respondent,**

v.

**Christopher EDWARDS, Appellant.**

**No. A07–1012.**

Supreme Court of Minnesota.

Nov. 19, 2009.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Mark A. Ostrem, Olmsted County Attorney, Rochester, MN, for respondent.

Rochelle R. Winn, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

DIETZEN, Justice.

Appellant Christopher Edwards (Edwards) was convicted of one count of first-degree assault and three counts of drive-by-shooting arising out of a shooting incident in which three individuals sustained gunshot injuries. The district court imposed concurrent sentences for the drive-by shooting convictions involving two of the victims and imposed a 190–month sentence for the assault conviction involving the other victim, which is a 30–month upward departure. Edwards appealed to the court of appeals arguing that the district court abused its discretion in imposing the upward durational departure for the first-degree assault conviction. The court of appeals affirmed, and we granted review. We affirm.

In the early morning hours of January 28, 2006, Olmsted County deputies responded to multiple gunshots at the Shopko parking lot in Rochester, Minnesota. Upon arrival, the deputies stopped three vehicles that were leaving the parking lot. Makara Din, a passenger in one of the vehicles, had been shot in the chest and was transported to the hospital in severe respiratory distress. A car driven by James Mason with appellant as a passenger, and a vehicle containing Phalla Krouch and one of his friends, were the other two vehicles stopped by law enforcement. Edwards was transferred to the law enforcement center. During that time, swabs were taken of Edwards' hands, and gunshot residue was found on his left hand and both cuffs of his coat.

Din, who suffered gunshot wounds to the upper part of his sternum and his back near the right shoulder blade, was treated at the emergency room. Khaosan Ruos and his brother also suffered gunshot wounds, and Khaosan Ruos was treated at the emergency room.

The State charged Edwards with first-degree assault, in violation of Minn.Stat. §§ 609.221, subd. 1, and 609.05 (2008), and with three counts of drive-by shooting, in violation of Minn.Stat. §§ 609.66, subd. 1e(b) and 609.05 (2008), for the shooting and resulting injuries sustained by Makara Din, Khaosan Ruos, and Khaosorn Ruos.[1]

Edwards waived his right to a jury trial, and the case proceeded as a court trial. At trial, the State presented testimony that Krouch had stopped at a Kwik Trip so that his friends could use the restroom and buy cigarettes. Krouch got into an argument with Matt Watson and others in Watson's car. Watson called Edwards saying he was having trouble with some Asian

1. Edwards was also charged with attempted first-degree murder; the district court found him not guilty because he lacked the requisite intent.

men and arranged to meet at a nearby McDonald's. Krouch followed Watson's car to McDonald's but left when he saw that Watson had another car with him. At that point, one of Krouch's friends, Sokha Vong, called Makara Din for assistance and asked Din to meet them at a nearby Shopko parking lot because they were being followed by two or three cars.

Cars driven by Krouch, Vong, and Din converged at the parking lot. Mason stated that when he drove into the lot, some of the individuals confronted them, yelling and swearing. Edwards opened the passenger-side window, leaned out, and fired several shots. Makara Din, Khaosan Ruos, and Khaosorn Ruos suffered gunshot wounds.

Several witnesses described that the parking lot was shared by Shopko, the Chateau Theater, and several other stores in the strip mall. Mason testified that Edwards was shooting towards the Chateau Theater. Law enforcement discovered that the wall of the Chateau Theater had been recently damaged by bullets, and two bullet fragments were found near that wall. The head of security for Shopko testified that the store was closed between 10 p.m. on Friday night and 8 a.m. on Saturday morning, but that the store has employees that work overnight.

Following a bench trial, the district court found Edwards guilty of first-degree assault involving Makara Din and drive-by shooting of Din, Khaosan Ruos, and Khaosorn Ruos. At sentencing, the district court

calculated Edwards' criminal-history score as four and determined that the presumptive sentence for first-degree assault was 114–160 months. Based on a criminal-history score of six, Edwards' presumptive sentence for the drive-by shooting of Khaosan Ruos was 92–129 months;[2] and based on a criminal history score of seven, Edwards' presumptive sentence for the drive-by shooting of Khaosorn Ruos was 92–129 months. The State argued that the assault of Makara Din was significantly more serious than the typical first-degree assault and merited an upward departure.

The court granted the State's motion for an upward departure of 30 months, resulting in an executed sentence of 190 months for the first-degree assault. It found that:

> Defendant's conduct in assaulting Makara Din was significantly more serious than that typically involved in the commission of the crime of first degree assault, in that Defendant fired seven times at or toward a group of nine people in the immediate area, exposing all of them to injury or death, and, in addition to Makara Din, seriously injuring Khaosan Ruos. Defendant's conduct was particularly serious and represented a greater than normal danger to the safety of other people.

The court then imposed an 88–month sentence for the drive-by shooting of Khaosan Ruos, which was a four-month downward departure, and a 98–month sentence for the drive-by shooting of Khaosorn Ruos. The court ordered that the sentences be served concurrently.[3]

2. Edwards received two criminal-history points for the first-degree assault conviction because it was a level IX offense. *See* Minn. Sent. Guidelines II.B.1.a. Those points were added to his criminal-history score prior to his sentencing on the drive-by shooting offenses involving Khaosan using the *Hernandez* method. *See State v. Hernandez,* 311 N.W.2d 478, 481 (1981). Edwards then received one

criminal-history point for the drive-by shooting conviction involving Khaosan. *See* Minn. Sent. Guidelines II.B.1.a. That point was added to his criminal-history score prior to his sentencing on the drive-by shooting offense involving Khaosorn.

3. The district court could have chosen to impose consecutive sentences for the assault and drive-by shooting convictions without depart-

Edwards appealed the upward departure for the assault conviction. The court of appeals affirmed, concluding that the district court did not abuse its discretion in granting the upward departure based on Edwards' indiscriminate firing into the crowd. *State v. Edwards,* No. A07–1012, 2008 WL 2885719, at *3–4 (Minn.App. July 29, 2008).

## I.

■■■ The issue before us is whether the trial court erred in imposing a 190–month executed sentence, which is an upward departure of 30 months, for Edwards' assault conviction. This court reviews a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. *Taylor v. State,* 670 N.W.2d 584, 588 (Minn.2003). If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed. But if the district court's reasons for departure are "improper or inadequate," the departure will be reversed. *State v. Jackson,* 749 N.W.2d 353, 357 (Minn.2008) (quoting *Taylor,* 670 N.W.2d at 588).

The Minnesota Sentencing Guidelines were created to promote uniformity, proportionality, rationality, and predictability in sentencing. *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002). Through the guidelines, the legislature seeks to ensure that "sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines I; *Jackson,* 749 N.W.2d at 357.

■■■ The sentencing guidelines permit departures from the presumptive sentence, but a court departing from the guidelines must articulate "substantial and compelling" circumstances justifying the departure. Minn. Sent. Guidelines II.D; *Jackson,* 749 N.W.2d at 360. "Substantial and compelling" circumstances are those showing that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the offense in question. *State v. Jones,* 745 N.W.2d 845, 848 (Minn.2008).

■■■ Under our sentencing jurisprudence, it is permissible for the district court to impose an upward sentencing departure if the evidence shows that the defendant committed the offense in question in a particularly serious way.[4] *Ture v. State,* 353 N.W.2d 518, 525 (Minn.1984) (concluding that whether an upward departure is justified "depends on whether defendant committed the crime in question … in a particularly serious way"). But the district court is not permitted to impose an upward departure if the sentence will unfairly exaggerate the criminality of the defendant's conduct, or punish a defendant twice for the same conduct. *See State v. Osborne,* 715 N.W.2d 436, 446 (Minn.2006). In considering whether the facts given by the district court to impose an upward departure are legally permissible, we consider whether those facts are

---

ing upward, *see* Minn. Sent. Guidelines II.F.1, but instead it imposed concurrent sentences. Had the district court imposed consecutive sentences, the maximum presumptive sentence would have been 274 months without the upward departure on the assault conviction, or 304 months with the upward departure.

4. Our sentencing jurisprudence treats "significantly more serious" and "particularly serious" as equivalent standards. *See State v. Back,* 341 N.W.2d 273, 276 (Minn.1983) (equating a determination that defendant's conduct was "significantly more serious" than usual with the conclusion that defendant committed the offense of conviction in a "particularly serious way").

"available" for departure. *See Jones,* 745 N.W.2d at 849 (listing the categories of facts available to district courts looking to depart upward). We have articulated several principles to assist the district court in determining what facts are "available" for departure.

■ First, the district court may not base an upward departure on facts necessary to prove elements of the offense being sentenced. *State v. Blanche,* 696 N.W.2d 351, 378–79 (Minn.2005) ("The reasons used for departing must not themselves be elements of the underlying crime."); *State v. Peterson,* 329 N.W.2d 58, 60 (Minn. 1983). This principle is not implicated in this case.

■ Second, the district court may not base an upward departure on facts that, while not necessary to satisfy the elements of the offense in question, were nonetheless contemplated by the legislature when it set the punishment for the offense being sentenced. *State v. Stanke,* 764 N.W.2d 824, 827–28 (Minn.2009). This principle is at issue in this case.

Third, we have limited the availability of facts underlying a separate offense to support an upward departure for the conviction at issue. This principle is also at issue in this case. Our restrictions on the use of facts underlying separate offenses to depart upward originated in *State v. Ott,* where we considered whether the district court could base a decision to impose consecutive sentences, which was a departure under the sentencing guidelines, on facts underlying an uncharged separate incident. *State v. Ott,* 341 N.W.2d 883, 884 (Minn.1984). We concluded that facts underlying an uncharged *separate* incident are an impermissible basis for departure because those facts do not show that the offense being sentenced was committed in a particularly serious way. *Id.*

Ott pleaded guilty to two counts of burglary and two counts of theft arising from two separate incidents, one occurring in July 1982 and the other in September 1982. *Id.* at 883–84. The district court imposed an executed sentence of 25 months for the September offenses and probation in connection with the July offenses. *Id.* at 884. The district court explained the departure by citing Ott's prior failure on probation, the fact that Ott's extended confinement in prison would better protect the community, and the fact that there were other separate incidents of the same nature for which the state agreed not to prosecute Ott. *Id.*

We held that none of the factors cited by the district court justified a departure. *Id.* Specifically, with respect to the district court's use of uncharged conduct underlying a separate incident, we stated that "[i]f evidence only supports defendant's guilt of some other offense but does not support the conclusion that the defendant committed the instant offense for which he is being sentenced in a particularly serious way, then it cannot be relied upon as a ground for departure." *Id.*

Subsequently, in *State v. Ford,* we considered whether facts underlying convictions arising out of a single behavioral incident, and which show the defendant committed the offense being sentenced in a particularly serious way, are "available" for an upward departure. *State v. Ford,* 539 N.W.2d 214, 229–30 (Minn.1995). We concluded that such facts may be used to depart. *Id.* at 230.

Ford was convicted of first-degree premeditated murder, first-degree murder of a police officer, and attempted first-degree murder, in connection with the murder of a police officer and the shooting of an innocent bystander. *Id.* at 217. The district court imposed an upward departure on the attempted first-degree murder conviction.

*Id.* The court gave several reasons for the upward departure, including: (1) Ford's conduct put a number of people at risk; (2) a victim suffered significant psychological trauma as a result of Ford's conduct; (3) a bystander suffered significant psychological trauma as a result of Ford's conduct; (4) the crime was motivated by revenge; (5) defendant was the "mastermind" behind the crime; and (6) the crime was planned in furtherance of gang activity. *Id.* at 230.

We explained:

Reasons 4, 5, and 6 clearly relate to Ford's planning and execution of Haaf's murder. However, reasons 1, 2, and 3 support Ford's guilt of murder and attempted murder equally. Since these reasons are not evidence that "*only* supports [Ford's] guilt of some other offense," they are allowable reasons for departure.

*Id.* (citing *Ott,* 341 N.W.2d at 884).

In other words, we determined in *Ford* that facts related to the planning of the murder were unrelated to the attempted murder and, therefore, under *Ott,* did not show that the attempted murder was committed in a particularly serious way. But we also concluded that facts relating to both the murder and the attempted murder—the risk to others and the trauma that the victim and others suffered—were available to enhance the attempted murder sentence because they supported the conclusion that the attempted murder was committed in a particularly serious way. That those facts also supported a conclusion that the murder was committed in a particularly serious way was of no consequence. *See Ford,* 539 N.W.2d at 230.

In *State v. Spaeth,* we considered whether conduct underlying a separate conviction was a permissible basis for an upward durational departure on a conviction that was part of the same behavioral incident, and concluded that it was not. 552 N.W.2d 187, 196 (Minn.1996). Spaeth was convicted of first-degree felony murder committed during a burglary, first-degree burglary, and first-degree assault, for a home invasion and murder. *Id.* at 189. He received a mandatory term of life imprisonment for the first-degree murder conviction and a consecutive 20–year sentence for the burglary conviction, which was an upward durational departure. *Id.* The district court found four reasons for the departure: (1) the victim's death; (2) the victim's vulnerability at the time of death; (3) the gratuitous violence of the murder in the form of repeated blows to the victim's head; and (4) mutilation of the body before and after death. *Id.* at 196.

Spaeth argued on appeal that the district court improperly departed upward from the presumptive sentence for the burglary conviction. We concluded that the reasons provided by the district court were improper bases for departure. *Id.* We explained: "Spaeth received a life sentence for the murder conviction, and it is impermissible to use as aggravating and vulnerability factors conduct that resulted in [the victim's] murder to justify an upward departure for the burglary conviction." *Id.* We did not explain, however, whether we rejected the departure because it was based on facts necessary to prove an element of first-degree murder (and thus their use to depart upward constituted double punishment), or because those facts did not relate to the burglary conviction. Given that some of the facts used by the district court to depart upward are elements of first-degree felony murder, while others are not, we read *Spaeth* to simply reiterate the rule that facts that do not relate to the offense being sentenced do not (and cannot) show that the offense being sentenced was committed in a particularly serious way.

With these general principles in mind, we turn to Edwards' sentence. Essentially, Edwards asserts two arguments to support his contention that the district court erred in imposing an upward departure of 30 months. First, he argues that facts underlying another conviction may never be used as the basis for an upward departure. Essentially, Edwards argues that our holdings in *Ott, Ford*, and *Spaeth* preclude his upward departure.

 We agree that the availability of facts underlying a separate incident as a basis for an upward departure is limited. In both *Ford* and *Spaeth*, we concluded that the facts in question did not relate to the offense being sentenced. Specifically, those facts did not show that the offense being sentenced had been committed in a particularly serious manner. But *Ford* and *Spaeth* do not expressly bar the district court from considering facts to depart simply because those facts related to another offense that arose out of the same behavioral incident. Accordingly, we conclude that *Ott, Ford*, and *Spaeth* do not prohibit the district court from using "overlapping" facts to depart upward when a defendant is convicted of multiple offenses arising out of a single behavioral incident, if those facts show that the defendant committed the offense being sentenced in a particularly serious way.

Second, Edwards argues that the legislature contemplated the "facts" that the district court used to depart upward on his assault conviction when the legislature set the punishment for drive-by shooting. Edwards was convicted and sentenced on two counts of drive-by shooting involving Khaosan and Khaosorn Ruos. He argues those facts related to the drive-by shooting have been "used up" for sentencing purposes, and the use of those factors to support his upward departure on the first-degree assault conviction involving Din

constitutes double punishment. Edwards relies on *State v. Thao*, 649 N.W.2d 414 (Minn.2002), to support his contention that the risk to bystanders arising from the firing of six bullets into a crowd of seven people was a fact contemplated by the legislature when it set the punishment for drive-by shooting under Minn.Stat. § 609.66, subd. 1e.

In *Thao*, the defendant was convicted of second-degree murder by drive-by shooting, which required the State to prove the lesser-included crime of drive-by shooting as one of the elements of the sentenced offense. 649 N.W.2d at 417, 423. We held that the random firing of multiple shots into a group of people was contemplated by the legislature as the predicate facts upon which the presumptive sentence for second-degree murder by drive-by shooting is based, and therefore could not be used to justify an upward departure. *Id.* at 424.

Our ruling in *Thao* is consistent with our second principle that the district court may not base an upward departure on facts not necessary to satisfy the elements of the offense in question, but which were nonetheless contemplated by the legislature when it set the presumptive sentence. Specifically, a conviction of second-degree murder by drive-by shooting may be satisfied by the defendant firing one bullet that strikes and kills the victim. Under *Thao*, any additional shots fired may not be used for an upward departure. The underlying premise is that an upward departure based on facts already contemplated by the legislature when it set the punishment for the offense in question would result in double punishment and therefore unfairly exaggerate the criminality of the defendant's conduct. *State v. Osborne*, 715 N.W.2d 436, 447 (Minn.2006).

But *Thao* is distinguishable from the case before us for two important reasons.

First, the statutes at issue are different. In *Thao*, the defendant was convicted of second-degree murder by drive-by shooting. 649 N.W.2d at 417. Drive-by shooting is an element of that offense, and the firing of multiple shots was contemplated by the legislature in setting the presumptive sentence for that offense. In this case, however, Edwards was convicted of first-degree assault, which does not include drive-by shooting as either an element of the offense, or as a lesser-included offense. Consequently, the legislature did not contemplate the risk associated with the firing of multiple shots into a group of people when it set the presumptive sentence for first-degree assault.

Second, this case involves multiple victims, and *Thao* did not. A discussion of the sentencing principles we have applied in cases involving multiple victims will be helpful in understanding the importance of this distinction. Minnesota Statutes § 609.035 (2006), precludes punishment for more than one offense committed by a defendant in the course of a single behavioral incident. This statute is intended to protect defendants from multiple punishment and to thereby ensure that punishment is commensurate with the defendant's criminality. *State v. Bookwalter*, 541 N.W.2d 290, 293–94 (Minn.1995). In *State ex rel. Stangvik v. Tahash*, 281 Minn. 353, 359–60, 161 N.W.2d 667, 672 (1968), we established a "multiple-victims" exception to Minn.Stat. § 609.035. Specifically, we concluded that "multiple crimes against multiple victims permit the imposition of more than one sentence." *Tahash*, 281 Minn. at 359, 161 N.W.2d at 672.

 Under the multiple-victims exception, defendants may be sentenced separately for multiple convictions arising from the same behavioral incident if those con-

victions relate to multiple victims.[5] *Id.* at 359–60, 161 N.W.2d at 672. In creating this exception, we noted that the California Supreme Court had created a similar exception in *Neal v. State*, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839, 844–45 (1960). *Tahash*, 281 Minn. at 360, 161 N.W.2d at 672. We explained:

> "[T]he purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability and a defendant who commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person."

*Tahash*, 281 Minn. at 361, 161 N.W.2d at 672 (quoting *People v. Ridley*, 63 Cal.2d 671, 47 Cal.Rptr. 796, 408 P.2d 124, 128 (1965)). In other words, we determined that multiple convictions arising from a single behavioral incident did not violate our rule against double punishment because where multiple victims are involved, a defendant is equally culpable to each victim. *See State v. Skipintheday*, 717 N.W.2d 423, 426 (Minn.2006).

Recently, the California Supreme Court considered an issue similar to the issue presented in this case. In *People v. Oates*, 32 Cal.4th 1048, 12 Cal.Rptr.3d 325, 88 P.3d 56, 58 (2004), the court considered whether California's statutory prohibition on multiple punishment precluded the district court from imposing sentencing enhancements where the defendant (Oates), while committing a drive-by shooting, fired two shots at a group of five people, injuring one. The State argued that the district court should have applied California's statutory firearm enhancement to each of

---

5. There are a number of statutory exceptions to the single behavioral incident rule. *See,*

*e.g.,* Minn.Stat. §§ 609.035, subds. 3–6, 609.251, 609.585 (2008).

Oates' five attempted-murder convictions. *Id.* The court agreed and held that imposition of identical sentencing enhancements for all five convictions based on the same facts was permissible under California's multiple-victims exception. *Id.* at 67. The court explained its decision with the same language we used in *Tahash:* "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." *Oates,* 12 Cal.Rptr.3d 325, 88 P.3d at 65.

 Under *Oates,* the increased culpability that attends multiple victims not only supports multiple sentences, but can also support identical sentencing departures based on the same facts for each sentence imposed. We find the reasoning in *Oates* persuasive. Where multiple victims are harmed by a defendant's conduct during a single behavioral incident, that defendant is more culpable than if he had harmed only one victim.[6]

Edwards argues that his departure violates our holding in *State v. Jackson,* 749 N.W.2d 353 (Minn.2008). But *Jackson* is distinguishable from this case. In *Jackson,* we considered whether the district court properly based an upward departure for Jackson's aggravated-robbery conviction on conduct underlying an uncharged lesser-included assault. *Id.* at 356. We concluded that the departure was impermissible because (1) our case law prohibits district courts from basing upward departures on uncharged lesser-included offenses, and (2) the upward departure was greater than the sentence that could have been imposed had Jackson been charged with and convicted of the assault. *Id.* at 357–58. We expressed concern that the prosecution was "manipulating" the sentencing guidelines by undercharging Jackson. *Id.* at 358. Unlike *Jackson,* Edwards' sentence was based on charged conduct, and his sentence was not greater than the sentence he could have received had the district court imposed consecutive sentences on his drive-by shooting convictions, which would not have required a departure under the guidelines. Moreover, there is no evidence of sentence "manipulation" by the State. For those reasons, we conclude that *Jackson* does not apply here.

 Accordingly, we conclude that when a defendant is convicted of several offenses involving multiple victims arising out of a single behavioral incident, a sen-

---

**6.** The dissent suggests that the multiple-victims exception to Minn.Stat. § 609.035 does not incorporate notions of proportionality because it was adopted at a time when Minnesota used indeterminate sentencing and appellate court review of sentencing was limited. We disagree. In *Tahash,* which was decided when indeterminate sentencing was used, we expressly noted that proportionality played a role in our decision to create the multiple-victims exception and in review of sentences imposed in violation of the statute. 281 Minn. at 360–61, 161 N.W.2d at 672–73 (noting that "[t]he philosophy behind the statute ... was to ... make both punishment and prosecution commensurate with culpability" and indicating that whether multiple sentences for multiple victims would violate the statute would depend on "whether multiple sentences would result in punishment grossly out of proportion to the gravity of the offense"). In other cases that predate the creation of the sentencing guidelines, we stated that "[w]e have adopted the rule that multiple sentences may be imposed in multiple victim cases provided the sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Rieck,* 286 N.W.2d 724, 727 (Minn.1979); *see also State v. DeFoe,* 280 N.W.2d 38, 42 (Minn.1979) (holding in cases involving multiple victims that "[a]llowing multiple sentencing ... does not unfairly exaggerate the criminality of the defendant's conduct and the double sentence seems commensurate with defendant's increased culpability").

tencing court may use "overlapping" facts of those offenses as the basis for an upward departure, provided that those facts show that the defendant committed the offense being sentenced in a particularly serious way.[7] In the context of multiple victims arising out of the same behavioral incident, a sentencing court must determine, on a victim-by-victim basis, (1) whether any facts show that the offense being sentenced has been committed in a particularly serious way, and (2) whether any sentencing principle prohibited the use of those facts to depart upward on the offense being sentenced.[8]

■ Performing this two-step analysis, we first conclude that the district court did not abuse its discretion in finding that Edwards' assault of Din was committed in a particularly serious way. We have repeatedly held that the risk to bystanders is an appropriate factor for courts to consider when determining the seriousness of a crime. *See, e.g., Blanche,* 696 N.W.2d at 379; *State v. Back,* 341 N.W.2d 273, 277

(Minn.1983). The record supports the district court's conclusion that Edwards' assault generated significant risk of bodily harm to a large number of people. Therefore, an upward departure is warranted.

■ Second, we conclude that the district court did not err when it used the risk to bystanders arising from Edwards' conduct as an aggravating factor. Risk to bystanders is not an element of assault, or any lesser-included offense, and thus its use to depart upward does not violate *Blanche.*[9] While a fact may be unavailable when imposing a sentence for an offense involving victim 1 (because the fact was considered by the legislature when assigning the punishment for the sentenced offense involving victim 1), this does not make that fact unavailable when the district court imposes a sentence for an offense involving victim 2, if the legislature did not consider the fact in question when assigning the punishment for the offense involving victim 2.[10] Thus, the risk to by-

7. The dissent argues that we have created an "overlapping facts" rule that is contrary to our jurisprudence and unnecessary. The dissent is mistaken for two reasons. First, our sentencing principle is more aptly characterized as the multiple-victims exception because our holding allows "overlapping" facts to be used in cases involving multiple victims arising out of a single behavioral incident. Second, the multiple-victims exception is a concept that dates back to 1968 and is well established in our law. *Skipintheday,* 717 N.W.2d at 426; *Tahash,* 281 Minn. at 359–60, 161 N.W.2d at 671–72.

8. Our analysis here is limited to the propriety of upward departures under the judicially created multiple-victims exception, however, and does not consider whether other upward departures are permissible under different circumstances, including additional statutory exceptions to Minn.Stat. § 609.035.

9. The dissent asserts that the "30–month upward departure for the assault amounted to punishment twice for the same conduct" be-

cause the "risk-creating conduct" of causing "great bodily harm" was considered when the offense-severity level of first-degree assault was established at a level higher than drive-by shooting. Essentially, the dissent argues that first-degree assault includes as an element the risk of injury to bystanders. We disagree. Under Minn.Stat. § 609.221, subd. 1, first-degree assault is an assault that "inflicts great bodily harm" on the victim. We see no language in the statute that extends its reach to the risk of harm to bystanders.

10. We note that the legislature recently clarified the extent to which Minn.Stat. § 609.035 limits a district court's ability to impose an upward departure. Minnesota Statutes § 244.10 (2008), which addresses sentencing departures, was amended in 2009. It now includes a provision stating, "[n]otwithstanding section 609.04 or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based on any aggravating factor arising

standers was a fact available to the district court when it imposed an upward departure on Edwards' assault conviction.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. I would conclude that the upward sentencing departure for the assault conviction was based on impermissible aggravating factors: conduct underlying the elements of the offense and conduct underlying separate convictions. Nevertheless, because the assault and drive-by shooting convictions are eligible for permissive consecutive sentences, I would vacate Edwards' sentence and remand to the district court for resentencing. The court's adoption of an overlapping facts rule, which is unnecessary in this case, in effect overrules our precedent.

*Durational Departures.* The purpose of the Minnesota Sentencing Guidelines "is to establish rational and consistent sentencing standards which ... are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines I. "Rationality goals were implicit in the creation and design of the commission itself as an independent agency charged with collecting information, drafting guidelines, and monitoring their implementation." Richard S. Frase, *Sentencing Guidelines in Minnesota, 1978–2003*, 32 Crime & Just. 131, 132 (2005).

To achieve proportionality, the guidelines employ a grid to determine the presumptive sentence for felonies. Minn. Sent. Guidelines II.C., IV (Sentencing Guidelines Grid). The vertical axis of the grid represents the severity of the offense. *Id.*, II.A, IV, V (Offense Severity Reference Table).[1] The horizontal axis represents the defendant's criminal history score. *Id.*, II.B, IV.

Offense severity is determined by the offense of conviction. *Id.*, II.A. To compute the criminal history score, for each felony conviction for which a felony sentence was stayed or imposed before the current sentencing, the offender is assigned a designated number of points; and the value of the points assigned is based upon the severity level of each of the previous offenses. *Id.*, II.B.1.a. To determine the sentence, the court locates the cell on the grid that corresponds to the offense level and the criminal history score. Other than the cells for relatively minor offenses, each cell contains three numbers. "The lowest number is the minimum guidelines sentence for that particular cell, the highest number is the maximum guidelines sentence, and the middle number is what might be referred to as the 'presumptive fixed sentence.'" *State v. Jackson*, 749 N.W.2d 353, 359 n. 2 (Minn.2008).

In keeping with the guidelines proportionality goals, we have recognized that factors the legislature has taken into account in determining the degree or seriousness of the offense are not grounds for upward departure. *State v. Shattuck*, 704

from the same course of conduct." Act of May 11, 2009, ch. 59, art. 5, § 8, 2009 Minn. Laws ——, —— (codified at Minn.Stat. § 244.10, subd. 5a(b) (Supp.2009)). This clarification does not apply to this case. *See id.* (stating that amendment applies to crimes committed on or after August 1, 2009). But our holding today is consistent with this statutory clarification because it allows a district court to consider overlapping facts arising out of a single behavioral incident as a basis for an upward departure when a defendant is sentenced for several offenses involving multiple victims.

1. Specified sex offenses are arrayed on a separate grid into eight severity levels. Minn. Sent. Guidelines II.A, IV.

N.W.2d 131, 140 (Minn.2005). We understood that a fact relied on in determining the degree of the defendant's guilt "plays a role in determining the offense severity level and ultimately in determining the presumptive sentence." *State v. Brusven,* 327 N.W.2d 591, 593 (Minn.1982). We have also recognized that conduct underlying one conviction cannot be used to support a departure on a sentence for a separate conviction. *State v. Spaeth,* 552 N.W.2d 187, 196 (Minn.1996). The rationale behind these rules "is that a defendant should not be punished twice for the same conduct." *State v. Osborne,* 715 N.W.2d 436, 446 (Minn.2006). We recently reaffirmed these rules. *State v. Jones,* 745 N.W.2d 845, 849–50 (Minn.2008) (concluding that it would be improper to enhance criminal sexual conduct sentence based on conduct underlying neglect and endangerment convictions); *Jackson,* 749 N.W.2d at 357–58 (concluding that departure for aggravated robbery sentence based on uncharged assault would have been improper had the offense been charged).

Edwards was charged with three counts of attempted first-degree murder (one per victim), first-degree assault (Makara Din), and three counts of drive-by shooting (one per victim). The events prompting the charges began with Matt Watson confronting Phalla Krouch and Sokha Vong at a convenience store at around 2 a.m. on a Saturday. The young men decided to engage in combat at another location. Watson called Edwards for help. Vong called Din, telling Din to meet them at a strip mall. Din drove to the strip mall, bringing two others with him. Believing that Din was going home and concerned about his intoxication, two girls followed Din in another car to see that he got home safely. The girls were surprised when Din turned into the mall parking lot. They were still in or by their car when Edwards' car made its pass through the parking lot and shots were fired.

The district court found Edwards not guilty of attempted first-degree murder. The court noted that Edwards fired toward the group while traveling at around 30 to 40 miles per hour. While testimonies estimating the distance between Edwards and the group "cluster[ed]" around 30 feet, the court found that forensic evidence and testimonies as to the group's location in the parking lot indicated that the distance was "easily a *multiple* of 30 feet," or "considerably greater than 30 feet." Given the distance and speed of the car, the court found evidence of intent to kill lacking.

In finding Edwards guilty of the first-degree assault and felony drive-by shootings, the court made the following specific findings:

1. On January 28, 2006, in Olmsted County, Minnesota, Defendant assaulted Makara Din by intentionally inflicting bodily harm on Din, or by doing an act with intent to cause Din to fear bodily harm or death. Specifically, Defendant fired multiple gunshots at or toward Makara Din, one bullet striking Din.

. . . .

4. On January 28, 2006, in Olmsted County, Minnesota, Defendant, while riding in a motor vehicle, recklessly discharged a firearm by firing at or toward another person; specifically, Makara Din.

5. On January 28, 2006, in Olmsted County, Minnesota, Defendant, while riding in a motor vehicle, recklessly discharged a firearm by firing at or toward another person; specifically, Khaosan Ruos.

6. On January 28, 2006, in Olmsted County, Minnesota, Defendant, while riding in a motor vehicle, recklessly discharged a firearm by firing

[at or] toward another person; specifically, Khaosorn Ruos.

The first-degree assault conviction, a severity level IX offense with Edwards' criminal history score of four, had a presumptive range of 114 to 160 months. The stated reason for the 30–month upward departure was the drive-by shooting: "that Defendant fired seven times at or toward a group of nine people in the immediate area, exposing all of them to injury or death, and, in addition to Makara Din, seriously injuring Khaosan Ruos."

The risk-creating conduct, however, factored into Edwards' greater liability for the assault.[2] The great bodily harm resulting from the drive-by shooting catapulted that offense to a first-degree assault, elevating the offense severity level from VIII to IX, and increasing the presumptive "top-of-the-cell" sentence duration by 55 months. The use of the drive-by shooting to support the 30–month upward departure for the assault amounted to punishment twice for the same conduct. *Cf. State v. Stanke,* 764 N.W.2d 824, 827–28 (Minn.2009) (holding that vulnerability of a peace officer factored into greater liability for fleeing a peace officer resulting in death). I would hold that the upward departure was based on impermissible aggravating factors: conduct underlying the elements of the offense and conduct underlying separate convictions. That, however, would not end the matter because the offenses were eligible for permissive consecutive sentences.

*Permissive Consecutive Sentences.* When an offender is convicted of multiple current offenses, in certain limited circumstances, consecutive sentences are permissive. Minn. Sent. Guidelines II.F. The guidelines outline the criteria for permissive consecutive sentences. *Id.,* II.F.2. The guidelines provide a list of offenses that are eligible for permissive consecutive sentences in cases of multiple current felony convictions. *Id.,* II.F.2.b. First-degree assault and felony drive-by shooting are eligible offenses. *Id.,* VI. Ordinarily, for each offense sentenced consecutive to another offense, a zero criminal history score is used to determine the presumptive duration. *Id.,* II.F.2. In Edwards' case, the second drive-by shooting conviction, a severity level VIII offense with a zero criminal history score, has a presumptive range of 41 to 57 months. Mathematically speaking, it seems to me the same 190–month duration could be attained by sentencing within the applicable presumptive range of each offense, such as 142 months for the assault conviction and a consecutive 48 months for the second drive-by shooting conviction.[3]

The decision to impose a permissive consecutive sentence is discretionary with the district court. *See Neal v. State,* 658 N.W.2d 536, 548 (Minn.2003). "Consecutive sentences are a more severe sanction because the intent of using them is to confine the offender for a longer period than under concurrent sentences." Minn. Sent. Guidelines, cmt. II.F.01. "In all cases the Commission suggests that judges

---

**2.** First-degree assault is an assault which "inflicts great bodily harm." Minn.Stat. § 609.221, subd. 1 (2008). Second-degree assault is an assault "with a dangerous weapon." Minn.Stat. § 609.222, subd. 2 (2008). An assault is "an act done with intent to cause fear in another of immediate bodily harm or death." Minn.Stat. § 609.02, subd. 10(1) (2008). An assault is also "the intentional infliction of or attempt to inflict bodily harm upon another." *Id.,* subd. 10(2).

**3.** Believing that permissive consecutive sentencing might apply, Court Services included various options in the presentence investigation report. The overall duration of the recommended sentence was close to the duration imposed by the district court.

consider carefully whether the purposes of the sentencing guidelines (in terms of punishment proportional to the severity of the offense and the criminal history) would be served best by concurrent rather than consecutive sentences." *Id.*

It is also worth bearing in mind that in response to *Blakely*,[4] the 2005 legislature substantially broadened the sentencing cell ranges. The intent was to reduce upward durational departures by expanding judicial discretion. *Jackson*, 749 N.W.2d at 360. Consequently, a severity level IX offense with a zero criminal history score now has a sentencing range of 29 months (74–103), and the same offense with a criminal history score of four has a range of 46 months (114–160). Previously, all level IX cells had a range of ten months. *Jackson*, 749 N.W.2d at 360. The level IX cell on the 2004 grid with a criminal history score of four has a range of 129 to 139 months. Minn. Sent. Guidelines IV (2004). In other words, by operation of the broadened judicial discretion in sentencing, in Edwards' case, an additional 21 months was allowable without a departure reason.

Although the district court might have reached the same sentence duration with permissive consecutive sentencing, we should not presume that determination, much less assume authority for resentencing in the first place. Consequently, I would vacate Edwards' sentence and remand the matter to the district court for resentencing, to include consideration of whether permissive consecutive sentencing meets the guidelines criteria; if so, whether the purposes of the guidelines would be served best by consecutive sentences rather than concurrent sentences; and if consecutive sentencing is deemed appropriate,

the precise computation of the duration of each sentence.

*Overlapping Facts.* I further disagree with the court's new standard, which provides that when several convictions involving multiple victims arise out of a single behavioral incident, the court "may use 'overlapping' facts of those offenses" for departures. The court relies on *People v. Oates*, 32 Cal.4th 1048, 12 Cal.Rptr.3d 325, 88 P.3d 56 (2004). *Oates* involved a California gun-enhancement law that added "25 years to life" to the defendant's determinate prison term for discharging a firearm in committing a listed felony.[5] *Id.* at 57. The defendant in *Oates* was convicted of five counts of attempted murder, one for each person in the group at which he fired. *Id.* at 58. The *Oates* court determined that the language, history, and purpose of the law required enhancements for each crime and that the judicially created multiple-victims exception to the statutory bar on multiple punishment permitted the enhancements. *Id.* at 60, 64–65. I see little connection between California's indeterminate-enhancements scheme, in which the parole board determines the defendant's ultimate release date, and our determinate sentencing system in which the ultimate release date is determined by the court-imposed guidelines sentence.

Moreover, we crafted the multiple-victims exception to Minn.Stat. § 609.035 when our sentencing system did not require rationality and proportionality because of the existence of a parole board to decide the defendant's ultimate release date. *Shattuck*, 704 N.W.2d at 145 (describing parole board's authority to parole or discharge a defendant without regard to the length of the sentence). Under indeterminate sentencing systems, as existed

---

4. *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

5. Cal. Ct. R. 4.405(3) (defining an enhancement as "an additional term of imprisonment added to the base term").

in Minnesota before the guidelines, rehabilitation was the important goal, and "punishment should fit the offender and not merely the crime." *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *see* Minn.Stat. § 609.115 (1976) (requiring estimates of prospects of defendant's rehabilitation in presentence report if the court so directs). Appellate review for proportionality of a sentence was not even allowed. *Jones,* 745 N.W.2d at 849 n. 3.

Proportionality and rationality, however, are central to the guidelines system. While appellate court review of a sentence promotes more rational sentencing policy, "on most issues, the [Sentencing Guidelines Commission] retains primary control over sentencing policy formulation." Frase, *supra* at 204. "Using the commission's expertise and independence, the guidelines seek to coordinate sentencing policy with available correctional resources ... with a specific goal of avoiding prison overcrowding." *Id.*

> A sentencing commission is well positioned to consider the aggregate effects of all sentencing laws and to make sure that the specific sentencing decisions add up to an overall, sensible policy. It can monitor the sentences for every crime and project the impact on prison resources. The permanent sentencing body thus becomes a de facto interest group for cost concerns and system-wide rationality.

Rachel E. Barkow, *Administering Crime,* 52 UCLA L.Rev. 715, 811 (2005).

In summary, I would conclude that the upward sentencing departure was improper, vacate Edwards' sentence, and remand for resentencing to include consideration of the propriety of consecutive service. I would also conclude that the overlapping facts rule supplants the old underlying conduct rule, undercutting guidelines proportionality goals and effectively overruling *Jones* and *Jackson.* "[T]he doctrine of stare decisis directs that we adhere to former decisions in order that there might be stability in the law." *State v. Ross,* 732 N.W.2d 274, 280 (Minn.2007) (citation omitted) (internal quotation marks omitted). Ordinarily, "[w]e require a compelling reason to overrule precedent." *State v. Her,* 750 N.W.2d 258, 272 (Minn.2008) (citation omitted) (internal quotation marks omitted). No such compelling reason exists here. Therefore, I dissent.

ANDERSON, PAUL H., J. (dissenting).

I join in the dissent of Justice Page.

MEYER, J. (dissenting).

I join in the dissent of Justice Page.