*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0244**

State of Minnesota,
Respondent,

vs.

Christopher Dennis Peterson,
Appellant.

**Filed December 28, 2015
Affirmed
Cleary, Chief Judge**

St. Louis County District Court
File No. 69DU-CR-14-2603

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Jessica J. Fralich, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and

Randall, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

On appeal from his conviction of second-degree felony murder, appellant Christopher Dennis Peterson argues that the district court erred in imposing a 480-month sentence, an upward durational departure almost twice the presumptive sentence. Because the district court did not err when it identified three aggravating factors as proper grounds for departure, we affirm.

## FACTS

On July 5, 2014, appellant carried his 13-month-old daughter to her upstairs bedroom in the home they shared with appellant's two other children. The child was crying and when appellant was not able to calm her down, he put his hand over her mouth and pinched her nose closed with his fingers until she stopped crying. Appellant's actions caused the child to stop breathing. Appellant felt the child's body go tense and he observed that she had stopped moving. He then placed her face down on her bed and left the room. Appellant did not return to check on the child and did not see the child again until her mother found her the next morning, dead in her crib.

Appellant had asphyxiated his daughter to stop her from fussing five or six times prior to July 5. On previous occasions, the child would start breathing shortly after appellant suffocated her, though at times it would take her as long as 20 seconds to begin breathing. Because this frightened appellant, he would sometimes stay in the room because he was worried he "had done something to [the child] that [he] needed to fix."

2

Appellant was charged with unintentional second-degree felony murder in violation of Minn. Stat. § 609.19, subd. 2(1) (2012). Domestic assault by strangulation was the predicate offense to the second-degree felony murder charge. Appellant waived his *Blakely* hearing and pleaded guilty to the second-degree felony murder charge. The plea agreement included a 480-month sentence—an upward departure from the presumptive range of 207-291 months—based on appellant's stipulation to additional aggravating facts. At the plea hearing, respondent questioned appellant on the facts supporting three aggravating factors: "particular vulnerability of the victim, particular cruelty to the victim, and the offense occurred within the victim's own privacy." The district court used appellant's responses as the basis for accepting his guilty plea and finding that the facts supported substantial and compelling reasons to depart.

At the sentencing hearing, the district court heard victim-impact statements and appellant made a statement, during which he expressed remorse. The district court noted appellant's remorse and then sentenced him to 480 months based on the recommendations of the parties and the factual admissions of the appellant. In its departure report, the district court included appellant's "[p]osition of authority, superiority, confidence or trust" in relation to the victim as a fourth aggravating factor supporting the upward departure. The district court and the parties had not previously discussed this factor during hearings, nor did the parties stipulate to facts that support it. This appeal followed.

## D E C I S I O N

In general, this court "afford[s] the [district] court great discretion in the imposition of sentences and reverse[s] sentencing decisions only for an abuse of that discretion." *State*

3

*v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). But where a district court departs from presumptive sentencing guidelines, we review de novo whether the district court's reason for its departure is permissible. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010).

"The Minnesota Sentencing Guidelines promote uniformity, proportionality, and predictability in sentencing." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). A district court must articulate proper, adequate reasons for an upward departure, and the record must include evidence sufficient to support the departure. *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quotation omitted). The Minnesota Sentencing Guidelines require that the district court's stated reasons for departure be "substantial and compelling," meaning that the facts "show[ ] that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the offense in question." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (quotations omitted). Upon review, this court will affirm a district court's departure where the reasons given for the departure are "legally permissible and factually supported in the record," but this court will reverse where the reasons are found "improper or inadequate." *Id.* (quotation omitted). "[W]hen the district court's stated departure reasons are improper or inadequate, an appellate court may independently examine the record to determine if there is sufficient evidence to justify departure, so long as the court does not engage in impermissible fact-finding." *State v. Weaver*, 796 N.W.2d 561, 572-73 (Minn. App. 2011), *review denied* (Minn. Jul. 19, 2011). A single aggravating factor may justify an upward departure. *Dillon*, 781 N.W.2d at 599.

The Minnesota Supreme Court has provided principles to guide district courts in determining when the facts support an upward departure in a particular case. *Edwards*, 774 N.W.2d at 602. A district court "may not base an upward departure on facts necessary to prove elements of the offense being sentenced" or "on facts that, while not necessary to satisfy the elements of the offense in question, were nonetheless contemplated by the legislature when it set the punishment for the offense being sentenced." *Id.* Nor may a district court depart upward based on facts underlying a separate, uncharged incident, because such "facts do not show that the offense being sentenced was committed in a particularly serious way." *Id.*

At the plea hearing, the district court accepted appellant's guilty plea and his admission to facts supporting the departure. The court specifically stated that it found the following three aggravating factors: the victim was particularly vulnerable, the offense occurred in the victim's zone of privacy, and appellant treated the victim with particular cruelty.

An aggravating factor may include situations where "the victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." Minn. Stat. § 244.10, subd. 5a(a)(1) (2012). In this case, the victim was just under 14 months old at the time of the offense. At the plea hearing, the prosecuting attorney questioned appellant about his actions and his daughter's vulnerability: "Do you agree that, because she was only 13 months of age and couldn't fight back, certainly couldn't defend herself from being suffocated . . . that makes her a

particularly vulnerable victim?" Appellant agreed with this statement. The district court subsequently made a finding that the victim was particularly vulnerable.

The record supports the district court's decision that the victim's particular vulnerability was a proper, adequate reason that justifies an upward departure. The predicate offense to the second-degree felony murder charge was domestic assault by strangulation. That statute provides, "Unless a greater penalty is provided elsewhere, whoever assaults a family or household member by strangulation is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both." Minn. Stat. § 609.2247, subd. 2 (2012). The statute defines "family or household members" to include, among other relationships, spouses and former spouses, parents and children, persons related by blood, and persons who reside together or who have resided together in the past. *Id.*, subd. 1(b) (2012); Minn. Stat. § 518B.01, subd. 2(b) (2012). The child's age is not a fact that is necessary to prove elements of the offense being sentenced here. Given the broad range of familial and household relationships the statute covers, it does not appear that the legislature contemplated that a victim of domestic assault by strangulation would necessarily be vulnerable based on his or her age. The fact that the victim in this case was so young, and thus quite powerless to defend herself in any way, supports an upward departure based on vulnerability.

The district court found that appellant killed the child within the child's "zone of privacy," which is recognized as an aggravating factor that may justify an upward sentencing departure. Minn. Stat. § 244.10, subd. 5a(a)(14) (2012). A victim has an expectation of privacy in his or her home and in the area surrounding the home. *State v.*

*Kindem*, 338 N.W.2d 9, 17-18 (Minn. 1983). Even where the victim and the defendant share a residence, the victim has an expectation of privacy in his or her personal bedroom. *State v. Mohamed*, 779 N.W.2d 93, 99-100 (Minn. App. 2010).

In this case, the offense occurred in the child's bedroom, where appellant had taken the child in the evening to put her to bed. Appellant and the child lived in the same residence. The prosecuting attorney asked appellant, "[T]his [offense] happened in a place where [the child] should have felt safe with her father in her room. Do you agree with that [zone of privacy] factor being present in this case?" Appellant agreed with this statement.

The offense occurred in the victim's bedroom, and therefore within her zone of privacy, even though appellant shared the residence with the victim. Although the person who harmed the victim was her father, the analysis does not change. *Mohamed*, 779 N.W.2d at 100 (holding that in a case where a father subjected his son to serious physical abuse, the offense did not occur in a "zone of privacy" because no evidence showed that the defendant committed the offense in his son's bedroom). The location where the strangulation occurred is not a fact necessary to prove an element of the offense. Minn. Stat. § 609.2247, subd. 2. The district court therefore did not err in finding that the offense occurred in the victim's zone of privacy and is a proper ground for upward departure.

The district court also found that appellant treated the victim with particular cruelty. This is an aggravating factor that may justify an upward departure. Minn. Stat. § 244.10, subd. 5a(a)(2) (2012). The offense in question is unintentional second-degree felony murder based on the predicate offense of domestic assault by strangulation.

> [A]lthough every second-degree unintentional felony murder will undoubtedly involve some degree of cruelty, a district court may use particular cruelty as a basis for departure only when the cruelty associated with the crime for which the defendant was convicted is of a kind not usually associated with the commission of the offense in question.

*Tucker*, 799 N.W.2d at 587 (quotation marks omitted). During the plea hearing, the prosecuting attorney asked appellant whether he agreed with the following statements:

> [The victim] was treated with particular cruelty and . . . this was a pattern of behavior that you had engaged in before and, in this particular case, you left her for 14 hours. You never checked to make sure that she was breathing again. You never tried to resuscitate her and instead you went downstairs and smoked some marijuana. Do you agree with those factors as being evidence that [the victim] was treated with particular cruelty in this case?

Appellant agreed with the attorney's statements.

"[F]ailure to aid is relevant to whether a person convicted of a crime has acted in a particularly cruel manner, [but the Minnesota Supreme Court has] never affirmed a departure for particular cruelty based solely on the failure to render medical aid." *Tucker*, 799 N.W.2d at 587. The supreme court advised, however, that this does not mean that "failure to seek medical aid for a victim, standing alone, can never be the basis for an upward departure for particular cruelty." *Id.* at 587 n.3. In *Tucker*, the supreme court rejected an upward departure for particular cruelty based, in part, on the fact that the defendant "did not stay at the scene and actively ward off medical assistance or isolate [the victim] in such a way that it was difficult or impossible to render medical assistance to her." *Id.* at 588.

8

Here, appellant isolated the victim in a way that made it unlikely that medical aid would reach her. He did not return to check on the child, nor did he alert anyone else who could have helped her. Many hours passed before the child's mother found her the next morning. Appellant did not try to help the child when he apparently knew that she had stopped breathing. Appellant testified that he had previously suffocated the victim to stop her from fussing and in the past she had always started breathing again, but it had scared him when she seemed to stop breathing for too long. These facts suggest that appellant knew the danger of failing to act when he turned the child face down on her bed and left her alone in her room after suffocating her.

The prosecuting attorney characterized appellant's prior actions as part of a "pattern of behavior" because appellant had asphyxiated the victim before. The district court may have considered this fact when it found that appellant treated the victim with particular cruelty, though it is unclear from the record. A district court may not depart upward based on facts underlying a separate, uncharged incident, because such "facts do not show that the offense being sentenced was committed in a particularly serious way." *Edwards*, 774 N.W.2d at 602. Because no charges were filed based on the other instances of appellant smothering the victim, these instances cannot be used to show that appellant's behavior on the occasion that he killed the victim was more egregious than the behavior covered by the charged offense. Notwithstanding these other occasions on which appellant asphyxiated his daughter, there is sufficient evidence in the record to support a departure based on particular cruelty as an aggravating factor. On the night that appellant killed the victim, he

9

isolated the victim, failed to seek medical aid for her, and showed remarkable indifference to her plight.

The final aggravating factor the district court found was that appellant occupied a "[p]osition of authority, superiority, confidence or trust" in relation to the victim. When imposing a sentence outside the presumptive sentencing range, a district court should explain why the circumstances in the case "create a substantial and compelling reason" to depart from the guidelines. *State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009). The district court made no specific findings relative to this aggravating factor. The parties did not stipulate to facts that support this factor. The district court only indicated its reliance on this factor by checking the corresponding box in its departure report. However, we need not reach the question of whether this factor is a proper basis for departure, because the three stipulated factors were sufficient to support the district court's upward departure. The district court found three proper aggravating factors on which to base its upward departure, whereas a single aggravating factor would be a sufficient basis for departure. *Weaver*, 796 N.W.2d at 571. The district court therefore did not abuse its discretion in deciding to depart from the presumptive sentencing guidelines.

**Affirmed.**