STATE of Minnesota, Respondent,

v.

Anthony John PALUBICKI, Appellant.

No. A06–401.

Supreme Court of Minnesota.

Feb. 22, 2007.

## OPINION

MEYER, Justice.

Appellant Anthony John Palubicki challenges an order to make restitution payments to K.O. and M.B., children of the man Palubicki was convicted of murdering. Palubicki contends that K.O. and M.B. are not entitled to restitution for their personal losses because they are entitled only to the expenses their father would have incurred had he survived, and even if K.O.'s and M.B.'s personal expenses were permitted under Minnesota law, they are not entitled to restitution for expenses incurred while voluntarily attending the trial.

On January 25, 2003, the victim was found murdered in his Park Rapids home; the facts of the murder are discussed more fully in *State v. Palubicki,* 700 N.W.2d 476, 480 (Minn.2005). After a jury trial, Palubicki was convicted of one count of first-degree premeditated murder in violation of Minn.Stat. § 609.185(a)(1) (2006), two counts of first-degree felony murder in violation of Minn.Stat. § 609.185(a)(3) (2006), and was sentenced to life in prison for each of the three counts. *Palubicki,* 700 N.W.2d at 480. Palubicki appealed his conviction, citing numerous procedural, evidentiary, and sentencing errors. *Id.* We concluded that the district court erred by entering separate adjudications and sentences for each of Palubicki's convictions[1] but rejected the remainder of Palubicki's claims. *Id.* at 491. We remanded the case for readjudication and sentencing, ordering the district court to determine which of Palubicki's convictions and sentences should be vacated. *Id.*

On remand, the district court entered a life sentence on Palubicki's first-degree premeditated murder conviction and vacated the first-degree felony murder sentences, but failed to vacate Palubicki's two first-degree felony murder convictions. After resentencing, the district court conducted a restitution hearing to address restitution requests from the Minnesota Crime Victims Reparations Board and the victim's two children and next of kin, K.O. and M.B. K.O. and M.B. requested restitution for lost wages, the cost of meals, and travel expenses incurred throughout the murder investigation and subsequent trial.[2]

K.O. also requested restitution for cleaning his father's home and long-distance telephone calls made during the criminal investigation and trial. Palubicki challenged K.O.'s and M.B.'s restitution requests. Palubicki did not dispute the Crime Victims Reparations Board's restitution request, acknowledging that the funds, which had been used to cover funeral expenses, were clearly reimbursable under the law.

K.O. testified at the grand jury proceedings and at trial. When not compelled to testify, K.O. voluntarily attended hearings and the trial. M.B. never testified, but she voluntarily attended Palubicki's trial and related hearings. At the restitution hearing, she testified that she did so because she "felt a strong obligation to make sure that [her] father was treated with respect and * * * that this whole process would come to closure somehow."

Palubicki conceded that any expenses arising from meetings with police investigators to give statements about the case were reimbursable under the statute. But Palubicki argued that when the family members voluntarily attended the criminal trial, they were not entitled to restitution.

■ The district court ordered restitution payments of $3,832 to be made to the Minnesota Crime Victims Reparations Board to cover the costs of the victim's funeral expenses and cleaning the murder scene. The court also ordered Palubicki to pay $4,769 to M.B. in restitution for lost wages and transportation and to pay $5,134 to K.O. in restitution for lost wages, transportation, long-distance telephone

---

**1.** We also concluded that the district court erred when it ordered Palubicki to pay a $200 co-payment for public defender services without first determining whether he had the ability to pay. We vacated the order requiring payment. *Palubicki,* 700 N.W.2d at 491.

**2.** K.O.'s and M.B.'s restitution requests also included expenses incurred by K.O.'s signifi-

cant other and the significant other's children, and M.B.'s husband during the investigation and trial. The district court concluded that only K.O. and M.B. qualified as victims under the restitution statutes and limited restitution costs to expenses actually incurred by K.O. and M.B. K.O. and M.B. did not appeal that decision.

calls, and meals. Palubicki appealed, challenging the legality of the restitution order, arguing that K.O. and M.B. are not entitled to restitution under Minnesota law and that the district court erred when it ordered restitution payments without offsetting his restitution by restitution payments the court had ordered Palubicki's alleged accomplice to pay.[3] He also claims that the district court erred when it failed to vacate two of his three convictions.

## I.

■ Under Minnesota law, victims of crimes are permitted to request restitution from a defendant if the defendant is convicted. Minn.Stat. § 611A.04, subd. 1 (2006). When the crime victim is deceased, the victim's surviving spouse or next of kin may receive restitution. Minn. Stat. § 611A.01(b) (2002).[4] In the restitution context, we apply the common law definition of "next of kin," which is the "nearest living blood relation." *State v. Jones,* 678 N.W.2d 1, 26 (Minn.2004).

Neither party disputes that K.O. and M.B., the victim's children and "nearest living blood relation," are victims under Minn.Stat. § 611A.01(b). Palubicki, however, disputes the type of reimbursement to which K.O. and M.B. are entitled under the statute. Palubicki argues that K.O. and M.B. are entitled to seek restitution only for the expenses to which the victim, their father, would have been entitled had he survived. Palubicki bases his argument on the language in *Jones,* which indicates that "victims" under Minnesota law are

those "who step into the shoes of the deceased direct victim of the crime." 678 N.W.2d at 25. According to Palubicki, K.O. and M.B. are merely surrogates for the victim and have no right to restitution for their personal expenses. The state responds that *Jones* only establishes who qualifies as next of kin under the statute, not what expenses are reimbursable, and emphasizes the remedial nature of the restitution statute.

Although *Jones* limits the number of people eligible for compensation under the statute, *Jones* does not in any way limit the types of restitution recoverable under the statute. 678 N.W.2d at 25–26. In *Jones,* the sister of a murder victim sought restitution when the victim's husband, a surviving spouse under the statute, and children, next of kin under the statute, did not. *Id.* at 25. The question was whether under Minn.Stat. § 611A.01(b) the language "surviving spouse or next of kin" permitted both the victim's surviving spouse and next of kin to receive restitution. *Jones,* 678 N.W.2d at 25. After determining that either the surviving spouse or the victim's next of kin, but not both, could request restitution, the court examined whether the victim's sister qualified as next of kin. *Id.* In concluding that the victim's children, but not her sister, qualified as next of kin, the court distinguished "next of kin" in a restitution action, a narrow class of individuals, from "next of kin" in a wrongful death action, a much broader class. *Id.* at 25–26.

---

**3.** The state contends that Palubicki's blanket assertion that K.O.'s and M.B.'s expenses were "not allowable" was not sufficiently detailed to meet the requirements for affidavits challenging restitution requests under Minn. Stat. § 611A.045, subd. 3(a) (2006), and therefore he is not entitled to challenge the restitution order. We conclude that although Palubicki's affidavit meets only the bare minimum definition of "detailed," the affidavit was sufficiently detailed for purposes of the

statute and Palubicki preserved his restitution challenge for appeal.

**4.** Minnesota Statutes § 611A.01(b) was amended in 2005 and broadened the definition of "victim" to include "family members, guardian, or custodian of a minor, incompetent, incapacitated, or deceased person." Act of June 2, 2005, ch. 136, art. 8, § 22, 2005 Minn. Laws 901, 1016.

We conclude that *Jones* was not meant to limit the recovery of a victim to only the losses that the deceased could have recovered had he or she survived. Moreover, nothing in the language of the statute limits reimbursable expenses in the manner that Palubicki proposes. Minnesota Statutes § 611A.01(b) defines "victim" as "a natural person who incurs loss or harm as a result of a crime." If the victim is deceased, " 'victim' means the deceased's surviving spouse or next of kin." Minn.Stat. § 611A.01(b). Nothing in the statute distinguishes living victims of a crime from individuals who become victims by virtue of being a surviving spouse or next of kin. Further, Minn.Stat. § 611A.01(b) states that its definition of victim applies for purposes of Minn.Stat. § 611A.04, subd. 1(a), which establishes what types of restitution requests are recoverable. Absent any limiting language in the statute, we will construe the statute to enable a surviving spouse or next of kin to receive restitution for personal losses if such losses resulted from the crime. Therefore, because K.O. and M.B. are victims under the statutory definition in Minn.Stat. § 611A.01(b), we conclude that they are not foreclosed from requesting restitution for their personal expenses resulting from the murder.

## II.

We next turn to whether K.O. and M.B. are entitled to restitution for expenses arising from their voluntary attendance at Palubicki's trial. Under Minn. Stat. § 611A.04, subd. 1(a), a restitution request "may include, but is not limited to, any out-of-pocket losses resulting from the crime, including * * * replacement of wages and services." The primary purpose of the statute is to restore crime victims to the same financial position they were in before the crime. *See, e.g., State v. Pflepsen,* 590 N.W.2d 759, 768 (Minn. 1999); *State v. Terpstra,* 546 N.W.2d 280,

283 (Minn.1996); *State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984) ("[T]he word 'restitution' connotes restoring or compensating the victim for his loss. If the legislature intended the term to be used more loosely, as a form of punitive damages, it should have used some other word or made its particular use of the word clearer."). We have recognized that the restitution statute's broad language gives the district court significant discretion to award restitution for a victim's expenses. *See State v. Tenerelli,* 598 N.W.2d 668, 671–72 (Minn.1999) (concluding that the need for a Hmong healing ceremony resulted from the appellant's assault on the victim and that the district court did not abuse its discretion when it ordered the appellant to pay restitution); *State v. Maidi,* 537 N.W.2d 280, 284–85 (Minn.1995) (affirming a trial court order granting restitution for counter-abduction expenses when the appellant had been convicted of interfering with parental or custodial rights in violation of Minn.Stat. § 609.26 (2006)).

In this case, Palubicki acknowledges that he is liable for the funeral expenses of the victim. However, he contests the other claims brought by the victim's children, claiming that their voluntary attendance at trial did not directly result from the crime. He asserts that the losses must be *directly* caused by the defendant's conduct. *See State v. Latimer,* 604 N.W.2d 103, 105–06 (Minn.App.1999). Palubicki argues that the lost wages did not *directly* flow from his criminal conduct but, instead, flowed from the state's decision to prosecute, the exercise of trial rights, and the choice of the next of kin to attend the trial. In other words, Palubicki argues that a boundary must be set by this court to limit a restitution claim lest its cause become too attenuated from the original criminal act.

The state argues for a more expansive interpretation of the statute, asserting that the costs of attending the trial resulted from the crime because the expenses would not have been incurred "but for" Palubicki's commission of the crime. *See In re Welfare of D.D.G.*, 532 N.W.2d 279, 282–83 (Minn.App.1995) (ruling that because a reward offer would not have occurred "but for" the defendant's bomb threat, the school district was entitled to restitution); *see also State v. DeGrote*, No. A03–908, 2004 WL 556946, at *3 (Minn. App. Mar.23, 2004) (ruling that restitution is appropriate when a victim would not have incurred expense "but for" the unlawful activity).

■ We agree with Palubicki that the potential exists for a restitution claim to become so attenuated in its cause that it cannot be said to result from the defendant's criminal act. For that reason, a but-for test has the potential to expand a restitution award beyond the statutory provision, and we decline to adopt such a broad test. We conclude, however, that this case does not present a claim where the claimed loss is too attenuated from the criminal act. The next of kin were in court as a direct result of Palubicki's crime. As victims of the crime under the statute, the next of kin did not choose to attend the court proceedings as disinterested bystanders. They attended because they were unavoidably entwined in the criminal proceedings. At the restitution hearing, M.B. testified that she "felt a strong obligation" to attend the trial. M.B. did not attend Palubicki's trial as an interested member of the public. Rather, she attended his trial to achieve closure in coping with her father's death. It is a direct result of the crime that the children of the murder victim attended the proceedings and suffered lost wages. Therefore, we conclude that the district court did not abuse its discretion when it ordered Palu-

bicki to pay restitution for K.O.'s and M.B.'s expenses.

### III.

■ Palubicki also contends that the district court erred in reimbursing K.O. $300 for meal expenses because the state did not prove by a preponderance of the evidence that the meal request was an appropriate reimbursement request. "Information submitted relating to restitution must describe the items or elements of loss, itemize the total dollar amounts of restitution claimed, and specify the reasons justifying these amounts." Minn. Stat. § 611A.04, subd. 1(a). K.O.'s restitution request identified the days he attended the trial, thereby providing the court with a guide for the days for which meal reimbursement was requested. We conclude that the district court did not abuse its discretion when ordering $300 in compensation for K.O.'s meals because the restitution request in its entirety provided sufficient detail to meet the statutory requirement.

### IV.

■ Palubicki asserts that even if K.O. and M.B. were entitled to restitution, the district court erred by ordering him to pay for K.O.'s and M.B.'s entire loss, because his accomplice had already been ordered to pay $19,380.54 in restitution. Palubicki argues that since the purpose of restitution is to compensate a victim for his or her loss, the total amount of restitution ordered by the court cannot exceed the actual loss suffered by the victim. The state responds that because Palubicki was not ordered to pay restitution beyond K.O.'s and M.B.'s recoverable costs, Palubicki does not have standing to pursue the matter.

Palubicki established at the restitution hearing that he has no assets and he earns

only $1.25 per hour working at a prison job. The prospect of K.O. and M.B. receiving double recovery is unlikely and, in any event, the question is prematurely before the court. K.O. and M.B. have not yet received payment in excess of their economic loss. Palubicki is the only party before the court. Unless challenged by Palubicki's accomplice, this court will not address the accomplice's restitution order. Given Palubicki's financial status, it is unlikely that K.O. and M.B. will ever be compensated for more than their economic loss. Therefore, we conclude that Palubicki's claim of double recovery is not yet ripe for consideration.

## V.

■ Palubicki argues that the district court erred when on remand it vacated two of his three sentences, but failed to vacate two of his convictions for first-degree murder. The state concedes that this was an error and in violation of Minn.Stat. § 609.035 (2006). Because the district court should have formally adjudicated and imposed sentence on one count only, and because this issue has already been remanded to the district court once, we vacate Palubicki's two first-degree felony murder convictions in the interest of judicial economy. We acknowledge, however, that if Palubicki's first-degree murder conviction is later vacated for any reason, the district court may then enter a first-degree felony murder judgment against Palubicki.

Affirmed in part; two convictions for first-degree felony murder in violation of Minn.Stat. § 609.185(a)(3) are vacated.