*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1665**

State of Minnesota,
Respondent,

vs.

Mary Marie Garner,
Appellant.

**Filed December 5, 2016
Affirmed
Halbrooks, Judge**

Fillmore County District Court
File No. 23-CR-15-372

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brett A. Corson, Fillmore County Attorney, Preston, Minnesota (for respondent)

Charles F. Clippert, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges her fifth-degree-assault conviction and the victim's award of restitution, arguing that the evidence is insufficient to prove that she was not acting in defense of her father and that she is not responsible for the victim's injuries. We affirm.

## FACTS

On March 23, 2015, J.A. was unable to move his car on the street because of the amount of snow piled around it. J.A. approached his neighbor, appellant Mary Garner, who had been shoveling her driveway. J.A. had previously seen Garner shovel snow into the street, so he accused her of piling snow behind his car. An argument ensued, and Garner told J.A. to "shove it" and "flipped him off." A.G., Garner's father, arrived at Garner's house with a snowblower and subsequently became involved in the dispute. Things escalated and, ultimately, J.A. and Garner were struggling on the ground.

In response to J.A.'s calls for help, a neighbor called 911. The neighbor's husband, R.O., intervened in the fight, pushed J.A. in the direction of his car, and helped J.A. free it from the snow so that he could drive away. Deputy Jesse Grabau responded to the 911 call and spoke with Garner, A.G., and R.O. Garner was not injured, but A.G. was bleeding as a result of hitting his head. A different deputy followed up with J.A. the next day, taking his statement and photographing the swelling and redness in the area of J.A.'s left temple, the back of his head, and his knee.

Garner was charged with fifth-degree assault. At trial, Garner asserted that she acted in defense of her father. The jury found Garner guilty of fifth-degree assault, and the district court ordered Garner to pay $4,698.53 in restitution to J.A. This appeal follows.

## DECISION

### A.    Sufficiency of the Evidence

Garner contends that her assault conviction is not supported by sufficient evidence because the state failed to prove beyond a reasonable doubt that her use of force was not justified in defense of A.G.  "In reviewing the sufficiency of evidence in a criminal case, '[appellate courts] are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged.'" *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004) (quoting *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978)).  We view the evidence presented in the light most favorable to the verdict.  *Id.* at 477.  We analyze a claim of defense of another as we do a claim of self-defense.  *State v. Richardson*, 670 N.W.2d 267, 278 (Minn. 2003).

Garner had the burden of "going forward with evidence to support" her defense-of-another claim.  *State v. Graham*, 371 N.W.2d 204, 209 (Minn. 1985).  A defendant meets this burden when she submits reasonable evidence that the victim was committing an independent assault at the time the defendant acted to defend another.  *See id.*  Garner testified at trial to the following: J.A. seemed threatening when he approached her about the snow around his car, verbally harassed her, and would not leave her alone.  J.A. pushed her and A.G. down, and then laid on top of A.G.  She then attempted to get J.A. off of A.G. by grabbing J.A.'s shoulders.  R.O. arrived and broke up the fight.

A.G. testified that when he arrived, J.A. was arguing with Garner.  After Garner took the snowblower off the trailer, A.G. saw her falling to the ground as if she had been

3

pushed. A.G. stated that J.A. hit him, causing him to fall to the ground and hit his head on the snowblower. J.A. ended up on top of him. According to A.G., Garner was trying to get J.A. off of him when R.O. arrived and broke up the fight. Based on this evidence, Garner sufficiently raised and supported her defense-of-another theory.

Once raised by the defendant and supported by evidence, the state must disprove the defense by disproving beyond a reasonable doubt at least one of the elements of the defense. *State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012). The elements of self-defense are

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014); *see also* Minn. Stat. § 609.06, subd. 1(3) (2014).

At trial, J.A. testified to the following: Garner "flipped him off" and told him to "shove it" when he confronted her about the snow piled behind his car. When A.G. arrived, Garner left her porch to join A.G. and they both used profanity, yelled at him, and called him a "faggot" multiple times. When J.A. resumed his efforts to free his car after apologizing to a neighbor for the commotion, Garner again left her porch to confront him, and A.G. threatened to kill him. J.A. got out his phone in an effort to record the altercation but A.G. knocked J.A.'s phone out of his hand. When J.A. tried to pick up his phone, Garner and A.G. repeatedly struck his head, torso, and back. When

4

J.A. stood up, Garner and A.G. held and hit him until he was able to free himself by grabbing A.G. and Garner's ankles, trying to flip them into the snowbank. Garner continued to hold J.A. after he attempted to flip A.G. onto the snowbank. The state also introduced into evidence several photos of J.A.'s injuries that were taken the day after the incident. The photos depicted bruises on J.A.'s head, torso, and back.

The witnesses in this case presented very different versions of what transpired in this incident. But the weight of the evidence and credibility of the witnesses are matters for the jury to evaluate. *State v. Engholm*, 290 N.W.2d 780, 784 (Minn. 1980). Here, although Garner claimed that J.A. was the aggressor and that she was only responding to defend her father from J.A.'s actions, the jury believed J.A.'s account of what happened.

Based on this record, the jury could have reasonably concluded that the state disproved either the first element of Garner's defense-of-another theory, that she was the aggressor in the fight, or the fourth element, that she failed to take advantage of reasonable possibilities to retreat. Giving due regard to the jury's acceptance of the state's proof and viewing the evidence in the light most favorable to the verdict, the state's evidence is sufficient to support a guilty verdict.

## B.    Restitution

Garner contends that the district court improperly ordered her to pay restitution for injuries that she did not cause. "[District] courts are given broad discretion in awarding restitution." *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). "A district court's order for restitution is reviewed under an abuse of discretion standard." *State v. Nelson*, 796 N.W.2d 343, 346-47 (Minn. App. 2011) (quotation omitted).

A victim may request restitution if the defendant is convicted of a crime. Minn. Stat. § 611A.04, subd. 1(a) (2014). When presented with a motion for restitution, the district court considers, among other factors, "the amount of economic loss sustained by the victim as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a)(1) (2014). We have interpreted the statute to "require that the claimed loss be 'directly caused by the conduct for which the defendant was convicted.'" *State v. Willis*, 883 N.W.2d 838, 842 (Minn. App. 2016) (quoting *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999)), *review granted* (Minn. Oct. 26, 2016). We later clarified that restitution is permissible only for losses attributable to the defendant. *Nelson*, 796 N.W.2d at 348.

Here, J.A. submitted an affidavit requesting restitution in the amount of $6,731.53, and he testified to the same at the restitution hearing. The claim was comprised of $1,504.40 in unreimbursed medical bills, $3,194.13 in lost wages, and $2,033 in attorney fees. Garner did not produce any evidence challenging the amount of restitution.

The district court ordered Garner to pay $4,698.53 in restitution, which amounted to J.A.'s medical bills and lost wages. A large portion of J.A.'s medical care resulted from the concussion that he suffered as a result of the assault, which prevented him from working for six weeks. It was not established at trial whether J.A. received the concussion as a consequence of the actions of Garner or R.O. when he intervened in an effort to break up the fight. Both J.A. and R.O. testified that R.O. punched J.A. in the head. But even if R.O. caused J.A.'s concussion, it can still be attributed to Garner because she instigated and escalated the assault that caused R.O. to hit J.A. *See State v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007) (holding wage-loss claims of a murder

6

victim's children due to voluntarily attending trial were not too attenuated from the defendant's actions and could be awarded).

Garner argues that she did not directly cause J.A.'s concussion because R.O.'s act of hitting J.A. was an intervening, superseding cause, relieving Garner of her liability for J.A.'s injuries. But the interpretation of the phrase "directly caused" does not parallel the interpretation of "direct cause." *See id.* (finding that "a but-for test has the potential to expand a restitution award beyond the statutory provision" and provide restitution for losses too attenuated from the criminal act). And because an intervening, superseding act serves only to break the direct causal chain, Garner's intervening, superseding-act argument does not apply to this analysis. *See State v. Hofer*, 614 N.W.2d 734, 737 (Minn. App. 2000), *review denied* (Minn. Aug. 15, 2000).

Garner also contends that the restitution award should be reduced because the district court relied on facts that were not presented to it—specifically the opinion of Randi Berg, M.D. Dr. Berg did not testify at trial or at the restitution hearing. The facts that the district court attributed to Dr. Berg's testimony appear in the state's restitution memorandum and are based on J.A.'s testimony at the restitution hearing. J.A. testified concerning how Garner's actions related to his injuries; his concussion diagnosis and symptoms, including headaches, dizziness, extreme nausea, throwing up, and insomnia; the fact that he was not allowed to work until he was medically cleared—six weeks post-injury—and how his medical appointments were necessary for his employer to permit him to return to work.

Because the evidence supports the restitution award, the district court did not abuse its discretion by ordering Garner to pay restitution to J.A.

**Affirmed.**