STATE OF MINNESOTA

IN SUPREME COURT

A22-0793

Court of Appeals                                                            McKeig, J.
                                                            Took no part, Procaccini, J.


State of Minnesota,

             Respondent,

vs.                                                            Filed:  January 10, 2024
                                                            Office of Appellate Courts
Henry Albert Allison, Jr.,

             Appellant.

————————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Matthew P. Franzese, Traverse County Attorney, Wheaton, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant
State Public Defender, Saint Paul, Minnesota, for appellant.

Travis J. Smith, Murray County Attorney, William C. Lundy, Assistant Murray County
Attorney, Slayton, Minnesota; and

Jeffrey Wald, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for amicus curiae
Minnesota County Attorneys Association.

————————————————

1.      Minnesota Statutes section 611A.01(b) (2022) creates a singular class of victims that includes the direct victims of a crime and, if the direct victim is a minor, those family members of the minor who incur a personal loss or harm as a direct result of the crime.  This singular class of victims has a right to receive restitution under Minnesota Statutes section 611A.04, subdivision 1(a) (2022).

2.      The district court did not abuse its discretion when awarding the victim mother restitution for the personal losses that followed naturally as a consequence of the crime committed against her minor child.

Affirmed.

O P I N I O N

MCKEIG, Justice.

Appellant Henry Albert Allison, Jr. pleaded guilty to three offenses related to pornographic photographs he had taken of a child.  As part of the plea negotiation, Allison did not agree to pay restitution.  Following a contested restitution hearing, the district court ordered Allison to pay restitution for the therapy costs and lost wages incurred by the child's mother.[1]  The court of appeals affirmed the order requiring Allison to pay restitution for the personal losses incurred by the child's mother.  We granted his petition for review.

---

[1]      The district court also ordered Allison to pay restitution for the travel expenses incurred by the child's mother and therapy costs incurred by the child and the child's sister. The propriety of these restitution obligations is not before us.

In his brief to our court, Allison acknowledges that Minn. Stat.§ 611A.01(b) (2022) includes a child victim's family members in its definition of "victim," but asserts that such victims are in a secondary class of victims who simply step into the shoes of the child victim for the limited purpose of exercising the duties they owe to the child. Based on that assertion, Allison argues the district court abused its discretion by awarding restitution for the lost wages and therapy costs incurred by the child's mother. In contrast, the State argues that, under section 611A.01, family members of the direct victim of the crime are part of a singular class of victims because the statute recognizes that "when a child suffers, their parents suffer as well."[2] Because we conclude that a person who incurs a personal loss or harm as a direct result of the crime being committed against a minor family member is a victim for purposes of Minn. Stat. § 611A.01(b), with a right to receive restitution under Minn. Stat. § 611A.04 (2022), and because the district court did not abuse its discretion when it awarded the victim mother restitution for the personal losses that followed naturally as a consequence of the crime committed against her minor child, we affirm.

## FACTS

On July 10, 2020, Allison took pornographic photographs of his ex-girlfriend's six-year-old daughter, A.G., while she slept. These photographs included one showing Allison's hand pulling aside A.G.'s underwear to expose her vagina, and a similar

---

[2]    This case is limited to "family members" of the direct victim of the crime. The question of whether a "guardian, conservator, or custodian of a minor, incompetent, incapacitated, or deceased person" is part of a singular class of victims under Minn. Stat. § 611A.01 is not before us.

photograph with A.G.'s underwear in place and Allison's exposed, erect penis in the frame. The photos were discovered by a third party and turned over to police.

In September 2020, the State charged Allison with second-degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(a) (2020), two counts of use of a minor in a sexual performance under Minn. Stat. § 617.246, subd. 2(a) (2020), possession of child pornography under Minn. Stat. § 617.247, subd. 4(a) (2020), and criminal sexual predatory conduct under Minn. Stat. § 609.3453, subd. 1 (2022). In October 2020, Allison pleaded guilty to the charges of second-degree criminal sexual conduct, one count of use of a minor in a sexual performance, and possession of child pornography; the two remaining counts were dismissed. Allison did not agree to pay restitution as part of the plea negotiation.[3]

At the February 2021 sentencing hearing, A.G.'s mother requested restitution for financial losses resulting from her therapy costs and lost wages.

A contested restitution hearing was held in August 2021, where A.G.'s mother testified that following the offense, A.G. had exhibited behavioral changes. These changes included that "[A.G.] does not want assistance with washing herself or changing whatsoever" and that A.G. does not "want anyone else in the room even her younger sister

---

[3]    The fact that Allison did not agree to pay restitution as part of the plea agreement distinguishes this case from *State v. Kennedy*, 327 N.W.2d 3, 4 (Minn. 1982) (allowing the defendant to agree to pay restitution for the losses of victims not named in complaint in exchange for dismissal of charges). As we did in *State v. Boettcher*, 931 N.W.2d 376, 381 n.5 (Minn. 2019), we emphasize that our analysis here does not alter the *Kennedy* rule that allows a court to order restitution for losses incurred as a direct result of dismissed charges when the defendant agrees to pay restitution in connection with those charges as part of the parties' plea negotiation.

4

when she is changing." Before the offenses, A.G. had "absolutely no problem with" her mother's assistance changing or bathing.

A.G.'s mother stated that she was "unable to be away from either of [her] children or allow anyone to care for them" because she was "afraid someone was going to hurt them if [she] was not there . . . the fears were taking over so that [she] could not do anything that needs to happen in everyday life." A.G.'s mother explained that as a result of this emotional trauma, she was unable to work her full-time job for four months following the discovery of Allison's offenses. She confirmed that there were no reasons outside of what happened to her daughter that caused the disruption in employment or the need for mental health assistance. She also provided copies of all related medical and therapy bills. A.G.'s mother's victim impact statement had also emphasized that the "stress and uncertainty" resulting from Allison's offenses "brought [her] personally to [her] breaking point," which led to a "week-long inpatient psychiatric stay followed by a six-week outpatient program."

After hearing the testimony and viewing the evidence, the district court ordered Allison to pay restitution for the therapy costs and lost wages incurred by A.G.'s mother. Allison appealed the restitution awarded to A.G.'s mother. The court of appeals upheld the restitution award for the lost wages and therapy costs incurred by A.G.'s mother because her testimony established that Allison's offenses caused her financial losses stemming from therapy costs and lost wages. *State v. Allison*, No. A22-0793, 2023 WL 125854, at *3 (Minn. App. Jan. 9, 2023).

We granted Allison's petition for further review.

5

## ANALYSIS

In his appeal, Allison claims that the district court abused its discretion when awarding restitution for the lost wages and therapy costs incurred by A.G.'s mother. Allison makes two arguments in his brief to support this theory. First, he argues that Minn. Stat. § 611A.01(b) creates a primary and a secondary class of victims for purposes of restitution and that a child victim's family members—as secondary victims—are only eligible for restitution for losses suffered directly by the child. Second, he argues that the type of personal losses incurred by A.G.'s mother were not the direct result of his offenses, and those losses are therefore ineligible for restitution. We address each argument in turn.

## I.

We first consider whether Minnesota's restitution statutes create two distinct classes of victims. "Statutory interpretation presents a question of law, which we review de novo." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022); *see also State v. Powers*, 962 N.W.2d 853, 858 (Minn. 2021). "The first step in statutory interpretation is to determine whether the statute's language is ambiguous." *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019). The language of a statute is ambiguous if it is "subject to more than one reasonable interpretation." *State v. Mauer*, 741 N.W.2d 107, 111 (Minn. 2007).

In determining whether language is susceptible to more than one reasonable interpretation, "we consider the canons of interpretation listed in Minn. Stat. § 645.08 (2014)." *Riggs*, 865 N.W.2d at 682. "One relevant canon provides that 'words

6

and phrases are construed according to rules of grammar and according to their common and approved usage.' " *Shefa v. Ellison*, 968 N.W.2d 818, 825 (Minn. 2022) (quoting Minn. Stat. § 645.08(1) (2020)).  In addition, the canon of word association directs that "when context suggests that a group of words have something in common, each word should be ascribed a meaning that is consistent with its accompanying words." *State v. Rick*, 835 N.W.2d 478, 485 (Minn. 2013), *abrogated on other grounds by State v. Thonesavanh*, 904 N.W.2d 432, 440–42 (Minn. 2017).  Finally, the canon against surplusage dictates that we "avoid interpretations that would render a word or phrase superfluous, void, or insignificant." *State v. Thompson*, 950 N.W.2d 65, 69 (Minn. 2020).  If a statute is ambiguous, "we may apply the canons of construction to resolve the ambiguity." *Thonesavanh*, 904 N.W.2d at 435.

With these canons of construction in mind, we turn our attention to the relevant statutory language, which reads:

> "Victim" means a natural person who incurs loss or harm as a result of a crime, including a good faith effort to prevent a crime, and for purposes of sections 611A.04 and 611A.045, also includes (1) a corporation that incurs loss or harm as a result of a crime, (2) a government entity that incurs loss or harm as a result of a crime, and (3) any other entity authorized to receive restitution under section 609.10 or 609.125.  *The term "victim" includes the family members, guardian, conservator, or custodian of a minor, incompetent, incapacitated, or deceased person.*

Minn. Stat. § 611A.01(b) (emphasis added).

Allison argues that the shared characteristic of the persons listed in the language italicized above is that they have a duty to protect the interests of the dependent individual. Therefore, in Allison's view, the language creates a secondary or derivative class of victims

who step into the shoes of the dependent individual. In contrast, the State argues that the shared characteristic of the persons listed in the italicized language is that they personally suffer when the dependent individual suffers. Therefore, according to the State, the language creates a singular class of victims that includes persons who personally suffer when a crime is committed against the dependent person.[4]

We conclude that, even after applying the canons of interpretation to the italicized language, the shared characteristics identified by the parties are both reasonable. Neither the rules of grammar nor the common usage of the words that appear in the language make one or both interpretations unreasonable. Moreover, because the shared characteristics identified by the parties add something to the definition of "victim" in the first sentence of section 611A.01(b), the canon against surplusage does not render one or both interpretations unreasonable.

Having concluded that the sentence—"[t]he term 'victim' includes the family members . . . of a minor, incompetent, incapacitated, or deceased person"— is subject to more than one reasonable interpretation, we may consider the canons of construction. *See* Minn. Stat. 645.16 (2022). These canons include "the occasion and necessity for the law," "the circumstances under which it was enacted," "the mischief to be remedied," "the object to be attained," "the former law, if any, including other laws upon the same or similar subjects," "the consequences of a particular interpretation," "the contemporaneous legislative history," and "legislative and administrative interpretations of the statute." *Id.*

---

[4] To illustrate this point, the State asserts that "when a child suffers, their parents suffer as well."

We begin with the necessity and circumstances surrounding the Legislature's enactment of the sentence "[t]he term 'victim' includes the family members, guardian, conservator, or custodian of a minor, incompetent, incapacitated, or deceased person" in Minn. Stat. § 611A.01(b). In 2004, we issued our decision in *State v. Jones*, 678 N.W.2d 1 (Minn. 2004), which involved a restitution request from an adult murder victim's sister for lost wages and travel costs for attending the murderer's trial. The district court declined to order restitution "because the sister was not a victim within the meaning of the restitution statute." *Id.* at 6. In a consolidated appeal, we considered the sister's restitution eligibility using the statutory definition of "victim" under section 611A.01(b) as it existed in 2004, which read:

> "[V]ictim" means a natural person who incurs loss or harm as a result of a crime, including a good faith effort to prevent a crime, and for purposes of sections 611A.04 and 611A.045, also includes (i) a corporation that incurs loss or harm as a result of a crime, (ii) a government entity that incurs loss or harm as a result of a crime, and (iii) any other entity authorized to receive restitution under section 609.10 or 609.125. If the victim is a natural person and is deceased, "victim" means the deceased's surviving spouse or next of kin.

Minn. Stat. § 611A.01(b) (2004). The State argued for a broad definition of victim, claiming that because the sister "incur[red] loss or harm as a result of a crime," she was entitled to restitution. *Id.*; *Jones*, 678 N.W.2d at 23. We found that definition problematic and held that the Legislature must have intended that phrase to mean "a natural person who incurs loss or harm as a [direct] result of a crime." *Jones*, 678 N.W.2d at 24 (internal quotation marks omitted) (alteration in original). We reasoned that the "the 'next of kin' who are restitution 'victim[s]' under the statute appear to be *only the persons who step into*

9

*the shoes of the deceased direct victim of the crime*, while the 'next of kin' who are potential plaintiffs in a wrongful death action are the indirect victims of the crime." *Id.* at 25 (emphasis added).

In the legislative session immediately following the *Jones* opinion, the Legislature amended section 611A.01(b), replacing the sentence "If the victim is a natural person and is deceased, 'victim' means the deceased's surviving spouse or next of kin" with the sentence "The term 'victim' includes the family members, guardian, or custodian of a minor, incompetent, incapacitated, or deceased person." Act of June 2, 2005, ch. 136, art. 8, § 22, 2005 Minn. Laws 901, 1017. The timing of the 2005 amendment reflects an intent to expand the statutory definition of "victim" beyond family members who "step into the shoes" of the victim against whom the crime was committed. This intent cuts against Allison's argument that the 2005 amendment created a secondary or derivative class of family member victims who are allowed to step into the shoes of the dependent individual for the limited purpose of exercising their legal duties,[5] and in favor of the State's argument

---

[5] Allison cites the concurrence in a 2017 court of appeals case that denied a restitution request made by an incapacitated person's conservator because the word "conservator" does not appear in the 2005 amendment to section 611A.01(b). *State v. Christensen*, 901 N.W.2d 648, 654 (Minn. App. 2017). The concurring judge argued the omission of the word conservator was not surprising because unlike conservators, the persons listed in section 611A.01(b) "personally care for the minor, incompetent, or incapacitated victim [and are afforded] certain rights *relevant to their particular duties*." *Christensen*, 901 N.W.2d at 657 (Smith, J., concurring) (emphasis added). Allison's reliance on the concurrence in *Christensen* is unavailing for three reasons. First, we are not bound by concurrences in court of appeals cases. Second, unlike A.G.'s mother, the conservator in *Christensen* was not directly harmed. Third, after *Christensen* was decided, the Legislature further expanded the definition of victim in section 611A.01(b), to explicitly include conservators.

that the 2005 amendment creates a singular class of victims which includes persons who personally suffer when a crime is committed against a dependent family member.

Next, we consider the mischief to be remedied and the object to be attained by the 2005 amendment. According to Allison, the object of the 2005 amendment was to remedy a family member's inability to recover losses associated with caring for a child victim. We disagree. When the Legislature enacted the 2005 amendment, existing law provided a family member the ability to recover losses associated with caring for a child victim. *See* Minn. Stat. § 611A.04, subd. 1(a) (2004). In *In re Welfare of J.A.D.*, 603 N.W.2d 844 (Minn. App. 1999), the court of appeals upheld an award of restitution for lost wages and travel time for a parent who had to drive their child victim to the police station to participate in the investigation. In upholding the award, the court stated:

> We cannot say that the legislature intended to exclude a class of victims who might incur expenses in the exercise of their victim rights simply because they are children who require the assistance of a parent. Accordingly, where a victim cannot exercise her rights as a victim without assistance, the cost of such assistance is subject to reimbursement via a restitution order.

*Id.* at 847. Because family members already had the ability to recover for losses incurred by a child victim prior to the expansions of the definition in section 611A.01, it is unreasonable to conclude that the object of the 2005 amendment was to give family members rights that they already possessed. Consequently, the mischief to be remedied and the object to be attained by the 2005 amendment also cut against Allison's argument that the 2005 amendment created a secondary or derivative class of victims who are allowed to step into the shoes of the dependent individual for the limited purpose of exercising their legal duties.

11

Similarly, the contemporaneous legislative history cuts against Allison's argument. The sponsor of the 2005 bill to amend the definition of victim referenced *Jones* when orally presenting his amendment and stated, "the goal of restitution is to—is or *should* be—to hold the offender accountable and for the *total* cost of the crime, and not just the cost incurred by a closest relation [to the crime]." Hearing on H.F. 1094, H. Comm. Pub. Safety Pol'y and Fin., 84th Minn. Leg., March 15, 2005 (audio tape) (comments of Rep. Steve Smith, House sponsor of the bill) (emphasis used to show spoken inflection).

Having considered the relevant canons of construction, we conclude that under Minn. Stat. § 611A.01(b), a person whose minor child is harmed by a crime is not in a secondary class of victims who simply step into the shoes of the child victim for the limited purpose of exercising the duties they owe to the child. Instead, the statute creates a singular class of victims that includes the direct victims of a crime and, if the direct victim is a minor, those family members of the minor who incur a personal loss or harm as a direct result of the crime. Accordingly, the provision in Minn. Stat. § 611A.04, subd. 1(a), that "[a] victim of a crime has the right to receive restitution," applies to this singular class of victims.

## II.

We next consider whether the district court abused its discretion when it determined that the losses claimed by A.G.'s mother for restitution satisfied the direct-causation standard articulated in *State v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007) and *Riggs*, 865 N.W.2d at 685–86, and later reaffirmed in *State v. Boettcher*, 931 N.W.2d 376, 380–81 (Minn. 2019). A district court "abuses its discretion when its decision is based on an

erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

Allison contends that our decisions in *Palubicki*, *Riggs*, and *Boettcher* require that the direct-causation standard be narrowly construed to exclude the type of personal losses incurred by A.G.'s mother because they are too attenuated from the offenses. The State argues that the losses incurred by A.G.'s mother fall directly within this court's existing direct-causation framework and that adopting Allison's interpretation would create an overwhelmingly high burden of proof on the parent of a child victim. "The interpretation of case law is a legal question that is reviewed de novo." *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011).

Under Minn. Stat. § 611A.04, subd. 1(a), "[a] request for restitution may include, but it not limited to, any out-of-pocket losses resulting from the crime . . . ." When determining whether a loss "results" from an offense for purposes of restitution, we have declined a simple "but-for" test because "the potential exists for a restitution claim to become so attenuated in its cause that it cannot be said to result from the defendant's criminal act." *Palubicki*, 727 N.W.2d at 667. Instead, we have adopted a "direct-causation" standard that allows a district court to "order restitution only for losses that are directly caused by, or follow naturally as a consequence of, the defendant's crime." *Boettcher*, 931 N.W.2d at 381. As part of our analysis in *Boettcher*, we clarified that a "factual relationship" between the crime and the loss is not enough to award restitution. *Id.*

13

We acknowledge Allison's policy concerns regarding losses that are too attenuated from the crime. Drawing the appropriate line is not easy—a fact we have recognized when reasoning "[e]very crime resonates within its community and may create innumerable victims, from the person against whom the crime was perpetrated to the unknown neighbor whose feelings of security are undermined," *Jones*, 678 N.W.2d at 24, and a crime victim's "loved ones may be disheartened . . . . [and l]ocal residents may fear for their safety," *State v. Skipintheday*, 717 N.W.2d 423, 427 (Minn. 2006). Following our decision in *Jones*, the Legislature, which is in a better position to " 'sort out conflicting interests and information surrounding complex public policy issues,' " *Poitra v. Short*, 966 N.W.2d 819, 824 (Minn. 2021) (quoting *State v. Khalil*, 956 N.W.2d 627, 633 (Minn. 2021)), drew such a line when it enacted the 2005 Amendment to section 611A.01(b). And, as explained in section I, parents who incur personal losses that follow naturally as a consequence of a crime committed against the parent's minor child fall inside that line.

Here, A.G.'s mother missed 4 months of work and spent a week in inpatient treatment and several weeks in outpatient treatment. These losses are more than "factually connected" to the crime Allison committed against A.G. *See Boettcher*, 931 N.W.2d at 381. As a natural consequence of the crime Allison committed against her daughter, A.G.'s mother suffered psychological trauma that required therapy and caused her to miss four months of work. Because the Legislature did not create two classes of victims for purposes of restitution awards to family members of a crime victim, and because A.G.'s mother proved to the district court that her losses were a natural consequence of Allison's

14

convicted offenses against her minor child, the district court did not abuse its discretion when ordering restitution for A.G.'s mother's lost wages and therapy costs.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.