STATE OF MINNESOTA

IN SUPREME COURT

A23-0126

Court of Appeals                                        Moore, III, J.
                                    Took no part, Hennesy and Gaïtas, J.J.

State of Minnesota,

                 Respondent,

vs.                                           Filed:  November 13, 2024
                                              Office of Appellate Courts

Dontae Deshaun White,

                 Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

Life-insurance proceeds paid to a family member of the deceased person should not be considered in determining the amount of economic loss sustained by the family member as a result of a murder for purposes of an order of restitution under Minn. Stat. § 611A.045, subd. 1(a)(1) (2022).

Affirmed.

1

O P I N I O N

MOORE, III, Justice.

The issue in this case is whether a district court should consider life-insurance proceeds paid to a family member of the deceased person in determining "the amount of economic loss sustained" by the family member "as a result of" the murder for purposes of issuing an order of restitution under Minn. Stat. § 611A.045, subd. 1(a)(1) (2022). Appellant Dontae White was convicted of second-degree intentional murder in connection with the shooting death of Kevin Beasley. When Beasley's mother, H.T., requested restitution for the money she spent on her son's funeral, White argued that in determining the amount of economic loss H.T. sustained as a result of her son's murder, the district court should subtract the life-insurance proceeds paid to H.T. The district court disagreed and ordered White to pay restitution to H.T. in the full amount requested. The court of appeals affirmed. Because we conclude that for purposes of an order of restitution, a district court should not consider life-insurance proceeds paid to a family member of the deceased person in determining the amount of economic loss sustained by the family member as a result of a murder, we affirm.

**FACTS**

Following a jury trial in August 2021, White was convicted of second-degree intentional murder, *see* Minn. Stat. § 609.19, subd. 1(1) (2022), in connection with the

2

April 2020 shooting death of Kevin Beasley.[1]  In October 2021, the district court sentenced White but reserved the issue of restitution.

Three months later, in January 2022, Beasley's mother, H.T., requested restitution for the money she spent on her son's funeral, which totaled $15,778.68.  The district court ordered White to pay the full amount of requested restitution, subject to White's right to object to restitution within 30 days.  *See* Minn. Stat. § 611A.045, subd. 3(b) (2022).

White filed a motion challenging restitution and requested a hearing.  At the contested restitution hearing, H.T. testified about the funeral expenses she incurred after Beasley was murdered.  H.T. also testified that she received proceeds from Beasley's life-insurance policy.  She stated that she did not know the exact amount of the policy, but that the policy proceeds were used to pay the entirety of the funeral expenses.

In a supplemental memorandum supporting his motion to deny restitution, White argued H.T. did not suffer "out-of-pocket losses" as described in Minn. Stat. § 611A.04, subd. 1(a) (2022), because the funeral expenses were offset by life-insurance proceeds paid to H.T.  White asserted that if the district court's initial restitution order was not modified, he would be forced "to pay for a loss that has already been remedied," resulting in a double recovery.

The district court disagreed, distinguishing life insurance from other types of insurance, such as homeowners' insurance, noting that life insurance cannot fully replace

---

[1]    White was also convicted of possession of a firearm/ammunition by a prohibited person.  *See* Minn. Stat. § 624.713, subd. 1(2) (2022).  That conviction is not relevant to the restitution issue raised in this case.

3

the loss of a family member but rather provides financial assistance in the wake of their death. The district court noted that the purpose of life insurance is *not* to solely cover funeral expenses. To the contrary, citing to *MONY Life Ins. Co. v. Ericson*, 533 F. Supp. 2d 921, 924 (D. Minn. 2008), the district court noted that "one of the primary purposes of a life insurance contract is to provide for the financial needs of a person (or persons)." The district court then explained:

> If this Court requires H.T. to use the proceeds of her son's insurance policy to pay his funeral expenses, the primary purpose of the policy—to provide financial security for his family upon his death—will be frustrated. Though her son will have received a decent burial, there will be fewer resources to help fill the financial gap left by her son's death. That gap is rightly filled by the person responsible for creating it.

As a result, the district court did not "view H.T. as recovering twice, but rather holding Mr. White accountable for the financial losses that occurred by his criminal actions and allowing the victim's life insurance policy to follow through on its intended purpose." Based on its analysis, the district court once again ordered White to pay H.T. the full amount of restitution requested for the funeral expenses.

White appealed the district court's restitution order. White argued that the plain meaning of the phrases "the amount of economic loss" and "out-of-pocket losses" in the restitution statute requires life-insurance proceeds received by the victim as a result of the crime to be considered when determining the victim's total reimbursable loss, relying on our decisions in *State v. Currin*, 974 N.W.2d 567 (Minn. 2022), and *State v. Wigham*, 967 N.W.2d 657 (Minn. 2021). In *Currin* we held that, based on the plain language of the restitution statute, "a district court must consider the value of economic benefits, if any,

4

the defendant conferred on the victim as a result of the offense when determining 'the amount of economic loss sustained by the victim as a result of the offense.' " 974 N.W.2d at 573 (citing Minn. Stat. § 611A.045, subd. (1)(a)(1)). And in *Wigham*—a case in which we analyzed a district court's obligation to consider an offender's ability to pay restitution—we discussed that the facts of the case had involved the state recognizing "a possible duplication error in the restitution amounts requested in the affidavits submitted by the insurance company and the homeowner." 967 N.W.2d at 660. Based on these cases, White argued that subtracting insurance proceeds from economic losses is an accepted legal principle when calculating restitution and analogized life insurance to homeowners' insurance.

The court of appeals affirmed the district court's restitution order. *State v. White*, 996 N.W.2d 206, 210 (Minn. App. 2023). As part of its analysis, the court of appeals explained that White's reliance on *Wigham* was misplaced because that case "did not decide whether insurance proceeds should be offset when awarding restitution to a homeowner who received [insurance proceeds]" but rather had merely described a "possible duplication error" in the two affidavits. *White*, 996 N.W.2d at 216 n.4 (citing *Wigham*, 967 N.W.2d at 660). The court of appeals also determined that *Currin* was inapplicable to White's claim because life insurance is not a "benefit[] the [family of the deceased person] 'received from the defendant.' " *Id.* at 217 (citing *Currin*, 974 N.W.2d at 573).

5

We granted White's petition for review of whether a district court must account for life-insurance benefits paid to a homicide victim's family when determining their total economic loss under the restitution statute.

**ANALYSIS**

The question presented is whether a district court should consider life-insurance proceeds paid to a family member of the deceased person in determining "the amount of economic loss sustained" by the family member "as a result of" a murder for purposes of a restitution order under Minn. Stat. § 611A.045, subd. 1(a)(1). We review a district court's restitution decision for an abuse of discretion. *State v. Andersen*, 871 N.W.2d 910, 913 (Minn. 2015). But when a district court premises its restitution award on an interpretation of Minnesota statutes, we review its legal conclusions de novo. *Currin*, 974 N.W.2d at 571. When we have interpreted the language of a statute on prior occasions, "that prior interpretation guides us in reviewing subsequent disputes over the meaning of the statute." *Else v. Auto-Owners Ins. Co.*, 980 N.W.2d 319, 329 (Minn. 2022) (citation omitted) (internal quotation marks omitted).

Under Minn. Stat. § 611A.04, subd. 1(a), the victim of a crime has a right to receive restitution. "A request for restitution may include, *but is not limited to*, any out-of-pocket losses resulting from the crime, including . . . funeral expenses." *Id.* (emphasis added). "The term 'victim' includes the family members . . . of a . . . deceased person." Minn. Stat. § 611A.01(b) (2022). When determining the appropriate amount of restitution, the district court shall consider only: "(1) the amount of economic loss sustained by the victim as a result of the offense; and (2) the income, resources, and obligations of the defendant."

6

Minn. Stat. § 611A.045, subd. 1(a)(1)–(2); *see also State v. Riggs*, 865 N.W.2d 679, 681 (Minn. 2015) (finding that Minn. Stat. § 611A.045, subd. 1, is an exclusive list of factors). And "[t]he primary purpose of the [restitution] statute is to restore crime victims to the same financial position they were in before the crime." *State v. Palubicki*, 727 N.W.2d 662, 666 (Minn. 2007).

We recently clarified what district courts must consider when determining the victim's "amount of economic loss" in *Currin*. 974 N.W.2d at 571 (internal quotation marks omitted). We determined that the plain meaning of " 'amount of economic loss sustained by the victim as a result of the offense' is the *total or aggregate diminution or deprivation of money, goods, or services* that a victim suffers as a direct result or natural consequence of the defendant's crime." *Id.* at 573 (emphasis added).[2]

White argues that the definition of "economic loss" articulated in *Currin* applies squarely to the facts here. White asserts that when a victim has used life-insurance proceeds to pay for funeral expenses while also claiming restitution for those funeral expenses, "the life insurance proceeds must be subtracted in order to arrive at the 'total or aggregate diminution . . . of money' that the victim suffered" under Minn. Stat. § 611A.045, subd. 1(a)(1). If the family of a deceased person receives benefits in the

---

[2]    As a result, we held that district courts "must consider *the value of economic benefits, if any, the defendant conferred on the victim as a result of the offense* when determining 'the amount of economic loss sustained by the victim as a result of the offense.' " *Currin*, 974 N.W.2d at 573 (emphasis added). Before the court of appeals, White argued that the life-insurance proceeds were a benefit conferred on H.T. as a result of the crime, and therefore, in accordance with *Currin*, the district court was required to consider that benefit in determining H.T.'s economic loss. The court of appeals rejected this argument and White abandoned it during oral argument before this court.

aftermath of a murder that equalize any financial loss the family incurred, and those benefits and losses are both a direct result of the crime, White's strict reading of *Currin* could prevent the victim's family from recovering restitution because they theoretically suffered no aggregate economic loss. *See Currin*, 974 N.W.2d at 573. But *Currin* did not involve life insurance or any type of insurance reimbursement. And for the reasons explained below, when applied to life-insurance proceeds, such an argument fails.

Citing *Wigham*, 967 N.W.2d at 660, White renews his argument that subtracting insurance proceeds from economic losses is an accepted legal principle when calculating restitution and analogized life insurance to homeowners' insurance. In *Wigham*, the sole issue was whether the district court fulfilled its obligation to consider the defendant's ability to pay restitution. *Id.* at 661. Before the district court, the victim and the victim's home insurer filed restitution claims that caused "confusion." *Id.* at 660. While discussing the procedural history on appeal, we noted that the State "recognized a possible duplication error in the restitution amounts requested in the affidavits submitted by the insurance company and the homeowner." *Id.* We did not hold that insurance proceeds should be considered when determining the appropriate amount of restitution for a victim who received proceeds from a homeowner's insurance policy. *See id.* at 659. Consequently, White's reliance on *Wigham* is misplaced.[3]

---

[3]      White also relies on nonprecedential opinions of the court of appeals for his argument that insurance proceeds should be subtracted from economic losses. *See State v. Adkins*, No. A13-0701, 2013 WL 6152322, at *3 (Minn. App. Nov. 25, 2013) (involving a restitution award for the appraised value of a stolen ring minus the insurance payment received by victim); *In re Welfare of Q.L.S.*, No. A03-1049, 2004 WL 614987, at *1 (Minn.

For the following reasons, we conclude that, in the context of restitution, life insurance is distinct. "A life insurance policy is a contract in which the insurer agrees to pay a third party a lump sum upon the death of the insured." 22 Britton D. Weimer et al., *Minnesota Practice—Insurance Law & Practice* § 10:2 (2023–24 ed.). Life insurance is a way for individuals to "shift and distribute the risk of loss from [their] premature death" by providing discretionary funds to a named beneficiary. 43 Am. Jur. 2d *Insurance* § 5 (2d ed. 2024). And when a beneficiary receives life-insurance proceeds, those funds can be used at the beneficiary's discretion for numerous purposes, including supplemental income for everyday bills and expenses.[4] *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1322 (8th Cir. 1991) ("[O]ne of the primary purposes of a life insurance contract is to provide for the financial needs of a person (or persons) designated by the insured."); *see also MONY Life Ins. Co.*, 533 F. Supp. 2d at 924–925 (same).

_____

App. Mar. 30, 2004) (involving restitution awards to the victims' homeowners' insurance for insurance reimbursement and to the victim for uninsured loss); *In re Welfare of B.L.W.*, No C5-03-403, 2003 WL 22232952, at *1 (Minn. App. Sept. 30, 2003) (involving restitution award based on insurance deductible paid by the victim, plus the difference between the cost of stolen items and the amount the victim was reimbursed by the insurance company for the items). These opinions are inapposite to the present case because they involved restitution claims where victims reported reimbursements from *property* insurance, as opposed to *life* insurance. We express no opinion on how reimbursements from property insurance should be addressed under the restitution statute.

[4]     We note that this case deals with a more general life insurance policy, as opposed to a burial or funeral expense policy. Burial or funeral expense policies generally provide smaller benefits for the limited purpose of covering the burial or funeral costs associated with the insured's death. *See* 1 Jordan R. Plitt et al., *Couch on Insurance 3d* § 1:42 (2024). Because there is nothing in the record showing that Beasley's life insurance policy was a specific burial or funeral expense policy, we express no opinion on whether the same outcome applies to burial or funeral expense policies.

9

This is a distinction from other types of insurance, where reimbursements are given to the insured—or, often, a third-party repair company—for replacement or repair of a specific good, vehicle, or property.

Furthermore, unlike property or vehicle insurance that provides for replacement of the appraised value of a tangible good or reimbursement of repair costs, a life insurance policy is an investment contract, not merely an indemnity contract. *See* Francis C. Amendola et al., 46A C.J.S. *Insurance* § 2053 (2024); *Hunt v. N. Carolina Logistics, Inc.*, 193 F. Supp. 3d 1253, 1271 (D.N.M. 2016); *see also* Jordan R. Plitt et al., 16 *Couch on Insurance 3d* § 222:27 (2024). The purpose of an indemnity contract such as a property insurance policy is to indemnify the insured against any loss sustained by reason of a specified hazard. Life insurance, by contrast, is an investment contract more akin to a cash asset because it provides a pre-determined sum of benefits upon the happening of a specified contingency based on the policy purchased—not the monetary value of the insured's life itself. *See* Francis C. Amendola et al., 44 C.J.S. *Insurance* § 23 (2024); Franklin L. Best, Jr., 1 *Life & Health Insurance Law* § 3:1 (2d ed. 2023). Because the loss of a life cannot be measured in the same way as the loss of a vehicle or home, life insurance is a tool for individuals to provide nominal financial security in the wake of such an immeasurable, devastating loss.

When the family of the deceased person uses the proceeds of a life insurance policy to pay for the cost of a funeral—an expense explicitly included in the definition of out-of-pocket expenses recoverable under a restitution order under Minn. Stat. § 611A.04, subd. 1(a)—an economic loss is undoubtedly felt; a cash asset that would have been available for

10

other purposes is no longer available. The victim's family is unable to use those proceeds for other intended purposes, such as supplementing the victim's lost wages, paying for childcare, or settling the victim's affairs. Life-insurance proceeds are not a credit available to the defendant to reduce the amount of restitution owed to a family member of the deceased person; rather they are an asset of the family member. We therefore reject White's contention that failing to consider life-insurance proceeds paid to a family member of the deceased person in determining the amount of economic loss sustained by the family member as a result of the murder for purposes of a restitution order allows a "double recovery" for the family of the deceased person.

For the reasons stated above, we hold that a district court should not consider life-insurance proceeds paid to a family member of the deceased person in determining "the amount of economic loss sustained" by the family member "as a result of" the murder for purposes of an order of restitution. Consequently, the court of appeals did not commit reversible error when it affirmed the district court's restitution order.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


HENNESY and GAÏTAS, J.J., not having been members of this court at the time of submission, took no part in the consideration or decision of this case.

11